## Thornton *et al.* v. Mulquinne.

1. Probate proceedings: sale of real estate. Where the record of proceedings in the probate court for the sale of real estate of a decedent, under the provisions of the Revised Statutes of 1843, failed to show that any petition for the sale of the real estate was filed by the administrator, that any notice was given of the pendency of a petition filed for that purpose, that notice was given of the sale in the manner required by law; that the administrator took the oath prescribed by law, or other evidence of the sale itself than the deed executed by the administrator; it was held that the sale could not be sustained.

2. Release. An intestate having died without issue, his father who was his sole heir at law, executed to his widow a release or relinquishment as follows: "I, P. T. Sr. do hereby release and relinquish all and every claim and demand, which I may have against the estate of P. T. Jr., late of Jackson county, deceased; and also relinquish all my

right as heir to the above estate to, and in favor of A. T., widow of the deceased; *Held*,

1. That it was not void for want of a consideration, or a description of the property conveyed, or as a release unsupported by a precedent estate in the releasee.

2. That it was sufficient to pass the entire interest of the grantor, as heir, in the real as well as the personol estate of the deceased.

3. CONSTRUCTION OF INSTRUMENTS. All instruments shall be so construed as to pass an estate when such was the intention of the party executing it.

4. PLEADINGS: WRITTEN INSTRUMENTS. When an instrument is set out in the pleadings, its effect as a deed of bargain and sale, as a covenant to stand seised, or as an instrument in any manner effectual to pass the title, is not changed by its being designated by the pleader as a deed of release.

*Appeal from Jackson District Court.*

TUESDAY, DECEMBER 31.

PATRICK THORNTON Jr. died July 4, 1849, without issue, leaving a widow, Anne Thornton, the daughter of respondent Margaret Mulquinne. The father of Patrick survived him, but departed this life in September, 1849. The widow of Patrick Jr., died in September, 1851. Patrick Jr. died siesed of certain real estate now in controversy in this suit. Complainants are the brothers and sisters of said Patrick, and claim the property, as such heirs. Respondents claim it under a sale by the administrators of the estate of Patrick Jr. (Anne, the widow, and one Sylvester Stephens,) and further insist that the father Patrick Thornton Sr., upon whom the estate was cast on the death of the son and brother, had sold or released the same to the widow Anne. The questions made relate to the sufficiency of the probate proceedings and the alleged conveyance by the father. For the further facts in relation to which, see the opinion.

*B. W. Poor* for the appellant.

I. The probate proceedings for the sale of the property

in controversy, are defective in the following particulars:

1. Ann Thornton, one of the administrators did not take the oath as required by the 11th section of the statute of 1843, p. 709.

2. The notice of the time and place of sale, required by law was not given. Rev. Stat. 1843, p. 708, § 13.

3. There is no evidence that the premises were sold at public auction.

The absence of either one of these requisites will be fatal to the sale. *Cooper* v. *Sunderland,* 3 Iowa 137 ; *Morrow* v. *Weed,* 4 Iowa 77.

II. The instrument set forth in the pleadings, executed by Patrick Thornton Sr. to the widow of Patrick Thornton Jr., is not a conveyance of real estate, nor any interest therein, and can not be made in any manner to operate as such ; and at most can be held only to relinquish any personal demand which Patrick Thornton Sr. had against his son, and also any claim which he had, as heir, to the personal property of the deceased.

1. The instrument does not on its face purport to convey real estate or any interest therein, or manifest any intent to do so. The word " estate," is applied to either real or personal property, but will not be applied to the realty to disinherit the heir. 12 Mod. 522. It must be used clearly with reference to land, and when mentioned generally with personal things it should be restrained to personalty. 2 Pres. Treat. Es. 146 ; *Shaw* v. *Bull,* 22 Mod. 522 ; 1 Jar. on Wills 566 ; 8 Ver. 607.

2. It does not contain any terms or phrases which are used as apt terms to describe or convey any interest in real estate, such as grant, bargain, sell, remise, quitclaim, &c.

3. It is necessary to the validity of a deed, that it con-

tain a description of the land or estate conveyed ; either by
metes and bonds, or by some other method sufficiently def-
inite to render the subject matter certain or capable of be-
ing made certain.   In this instrument there is no attempt
or pretense of description of any piece or parcel of land.
*Belamy* v. *Belamy's Administrator*, 6 Florida 108; *Lawson*
v. *Mead*, Hill & Denio R. 158; *Underwood* v. *Campbell*, 14
N. H. 393.

4. The instrument as a conveyance of a fee simple of
lands is absolutely void; and it is not reasonable to presume
that the parties intended a subject matter which can not be
conveyed in the manner and by the language which they
chose to adopt ; neither is it reasonable to presume such
subject matter, when there is a subject matter, personal
estate, to which it may relate.

5. The parties did not at the time treat it as a conveyance
of real estate.

III. But granting that it was the intention of the parties
to convey the real estate, we deny that this instrument can
can be effectual to carry out that intention.

1. It is not sufficient, under a proper construction of the
terms used.

2. Granting that the word " relinquish," may have the
force and effect of a release, there was no precedent estate
in possession for the release to operate upon.   A release
is the conveyance of a man's interest or right in lands or
tenements to another that hath some former estate in pos-
session.   2 Bla. Com. 324; Shep. Touch. 320 ; 4 Cr. Dig.
78; 2 Hillard Real Prop. 300 ; 2 Lomax Dig. 97 ; Co. Litt.
200.   The releasee must have a vested estate or interest in
the lands at least ; most authorities say, actual or legal pos-
sesion.   Co. Litt. 269 *a*, 270 *a*; Shep. Touch. 324, 328, 327
note ; 2 Preston Conv. 211.   The widow's dower had not
been assigned to her, and before assignment it was not a

sufficient interest to be "as a foundation for a release to stand upon." 4 Kent Com. 61; 1 Preston Es. 20; *Johnson* v. *Shields*, 32 Maine 426; *Blair* v. *Harrison*, 11 Ill. 384; *Jackson ex dem, Cloughs* v. *Vanderheyden*, 19 John. 166; *Jackson ex dem. Totton* v. *Aspell*, 20 Ib. 411; *Cox* v. *Jagger*, 2 Cow. 651; *Moon* v. *The Mayor, &c. of New York*, 4 Seld. 113; *Sheaf* v. *O'Neal*, 9 Mass. 13; *Nutt* v. *Nutt*, 2 Car. & Payne 430; 2 Com. 254; 1 Barb. 507; 13 Wend. 524; 10 Ib. 414; 4 Paige 448; 7 John 246; 11 Ib. 298; 16 Ib. 191; 1 Cr. Dig. 168; Park on Dow. 309, 269, 334, 339; 1 Hill. 177; Roper's Hus. & Wife 437; *Hildreth* v. *Thompson*, 16 Mass. 191.

IV. If this instrument does not enure as a release the defense fails altogether, for no other legal effect has been pleaded. 1 Chit. Pl. 305; Gould's Pl. 156.

V. But if properly pleaded it could not be construed as a conveyance of real estate either by common or statute law.

1. There is no pretense or proof of livery of seisin and hence it can not be construed as a feoffment or gift.

2. The statute of 1843, which was in force at the time of the execution of this instrument, is, as to the formalities and conditions essential to a good conveyance between the parties substantially the same as the statute of 27 Henry VIII c 10, usually called the statute of uses. Conveyances under these statutes are technacally called deeds of bargain and sale, covenants to stand seized to uses.

(*a*.) A pecuniary or valuable consideration is essential to the validity of a deed of bargain and sale, even between the parties. 2 Bla. Com. 338; Shep. Touch. 221; 4 Cr. Dig. 496; 2 Hill 310, and authorities there cited, 2 Lomax Dig. 134; 2 Smith's L. C. 452; *Jackson* v. *Pike*, 9 Cow. 169; *Jackson* v. *Alexander*, 3 John 492; 18 Ib. 78; 4 Cow. 427; 1 Cow. 623; 2 Hill. 275.

(*b.*) To sustain a covenant to stand seized there must be a good consideration, near blood relationship between the parties, or the consideration of a cotemporaneous or prospective marriage. But a past marriage is insufficient to raise a use, and thus render an intention to convey effectual. *Jackson* v. *Caldwell*, 1 Cow. 622 ; *Jackson* v. *Sebring*, 815 ; *Corwin* v. *Corwin*, 2 Seld. 342; 2 Smith L. C. 452.

*W. E. Leffingwell*, for the appellee.

WRIGHT, J.—The bill was dismissed in the court below, and complainants appeal. This ruling must be sustained, if at all, upon the effect to be given to the instrument signed by the father, and not upon the probate proceedings. Several insurmountable difficulties meet us in the consideration of this part of the defense. The alleged sale was made in 1850, and is to be governed by the statute of 1843, ch. 10, p. 706, 713. All the proceedings are embodied in the record, and these defects may be mentioned : We find no petition by the administrators for the sale of the land. There is no evidence that notice was given of the pendency of a petition for that purpose. It no where sufficiently appears that notice was given of the sale as required by law. The administrators took no oath as required by § 11 of said chapter. And finally there is no record that a sale ever was made. It is true that a deed seems to have been executed, but there is nothing to show that it was made pursuant to a sale ordered by the probate court. Under such circumstances, the sale can not be upheld. The absence of the required oath, of the notice of sale, and evidence that the premises were sold at public auction, are fatal to defendant's title. See § 36, ch. 10, p. 713; *Cooper* v. *Sunderland*, 3 Iowa 114; *Morrow* v. *Weed*, 4 Ib. 77 ; *Little* v. *Sennett*, 7 Ib. 324.

II. The son having died without issue, in the absence of

a will, the property descended to his father.  On the 21st
of August, 1849, he executed and delivered to the widow of
his son, the following instrument:

> " *State of Iowa,*    } ss.
> *Jackson County.*   }

" I, Patrick Thornton, of said county, on this 21st day of
" August, 1849, do hereby release and relinquish all, and
" every claim and demand which I may have against the
" estate of Patrick Thornton, Jr., late of Jackson county,
" deceased, and also relinquish all my right as heir to the
" above estate, to and in favor of Ann Thornton, widow of
" the deceased.

"Given under my hand and seal, the day and year above
" written.

Patrick Thornton.  (Seal.)

Done in presence of
  E. B. Curtiss,
  Sylvester Stephens."

This was not acknowledged, but proof of its execution
was made, under § 12 *et seq.* ch. 54, laws 1843, and to it in
this respect no exception are taken by complainants.  They
claim, however, that it did not divest the estate of the fath-
er, and that the title is therefore in them as his children and
heirs.

If the instrument is operative, we think it was intended
to pass the interest of the grantor to the real as well as the
personal estate.  In the first place, it appears affirmatively
by evidence *aliunde*, that there was no personal estate, or at
least a small amount, which would be and was vastly more
than consumed by the expenses of the administration.  There
was, therefore, in fact no personalty upon which the instru-
ment could exclusively operate.  But without giving weight
to this consideration, we turn to the language of the instru-
ment itself.  That it means more than a relinquishment of
any *personal demand* the father may have had against the

estate of the son, is manifest from the fact that this end was fully and entirely effected by the language used in the first part, and to say that the concluding part accomplished no more would make it surplusage and unmeaning tautology.

The language used is brief, simple, but comprehensive. " All my right as heir to the above estate." He was the heir, and as such held the fee to these lands, subject to the debts of the deceased son and the widow's dower. If he could thus relinquish his right to the land the language employed is certainly broad enough for that purpose. This general expression, if collocated with words descriptive of personal estate, might, upon authority, be restrained to subjects of the same species. If not thus restrained, " estate," includes every kind of property. In a will at least, it passes the fee without words of inheritance. It carries everything unless tied down by particular expressions. *Turbett* v. *Same*, 3 Yeates 187 ; 1 Term 411 ; 1 Dallas 226. It is said to be *genus generallisimum*. And see *Blagge* v. *Miles*, 1 Story 438 ; *Jackson* v. *De Lancey*, 11 John. 364; *Godfrey* v. *Humphrey*, 18 Pick. 537. But then treating this instrument as a deed, whether of bargain and sale or otherwise (which will be examined hereafter,) there is certainly nothing to limit or restrain the language to personalty. Existing personal and real property, it belonged to the estate of his son and descended to him as his heir. And it is his right as heir to such estate that he relinquishes. Not only his right as heir to one kind of property to the exclusion of the other, but to all, the estate, the entire estate. We know of no rule that would confine or restrain the word " estate " in the manner claimed. And the use of the word " heir " is appropriately of force in this connection. If this had been omitted, there would have been more plausibility in complainant's position. Its use and relation to the other language of the instrument, naturally conveys the impression that the party had reference to that which he had alienated

of a permanent nature, rather than a claim to chattels or personal estate.

But it is urged that the instrument is not good as a release, for the reason that it does not appear that the releasee had a former estate in possession. At common law, it is not to be contested that a mere release of a right to one not seised or in possession of the estate passed nothing as a release. But this doctrine was qualified very much even in ancient times. And this because of a proper desire on the part of courts to give force to the intention of the parties. The true principle, and one entirely in accordance with modern jurisprudence, is, that all instruments shall be so construed as to pass an estate, when such was the intention. *Russell* v. *Coffin*, 8 Pick. 143; Shep. Touch. 82. The rule is thus expressed in the case cited by PARKER, C. J., "When it is apparent that there was an intention in the grantor to convey, and in the grantee to take, although the instrument is not calculated technically to execute that intent, it should be made to operate in some other way to affect the purpose." Citing *Roe* v. *Tranner*, 2 Wils. 78; Hob. Rep. 277; *Crossing* v. *Scudamore*, 1 Vent. 141. The same rule is thus expressed in *Pray* v. *Pierce*, 7 Mass. 681. "It is the duty of the court to so construe the instrument as to give effect to the lawful intent of the parties and not to defeat it." And hence a deed of lease and release has been holden to be a covenant to stand seised to uses when the consideration was a good one, 2 Wils. *supra*. So a bargain and sale from a parent to a child, to take effect upon the death of the parent, has been holden to be a covenant to stand seised to the use of the parent for life, with a vested remainder to the children in fee; because as a bargain and sale it would have been a conveyance of a frehold *in futuro*, and therefore void. *Wallis* v. *Wallis*, 4 Mass. 135. And that the element of possession to uphold a deed of release is founded upon the merest technicality, see *Hamblet* v. *Francis*, Ib. 78,

where the controversy related to a parcel of flats below high water mark, and when the releasee used them alone for the purpose of laying mud coasters and other vessels on them. And this was held proper evidence of possession, to be left to the jury. And as to presumptions on this subject see *Reformed Church* v. *Veeder*, 4 Wend. 494. See also *Poor* v. *Robinson*, 10 Mass. 131. And for remarks upon a kindred subject, and here applicable, see *Pearson* v. *Armstrong*, 1 Iowa 295. It is there said: "We have not the various estates formerly known in England, with their complication of law. We have no occasion for their former distinction of conveyances. Is it not the intent and tone and spirit, of all our laws and institutions, and tenure of lands, that the latter may be conveyed by any words which manifest that purpose, and for any consideration we please, so that others having legal or equitable claims on us, are not injured?" And it may be remarked that those having such claims are creditors and *bona fide* purchasers, and not heirs.

PARKER, C. J., in *Russell* v. *Coffin, supra,* uses this strong language: "This deed can not operate as a release from the technical objection that Russell was not then in possession. But shall the deed have no effect? Was it not the intent that Coffin should sell, and that Russell should purchase? It would be going back to the dark ages, to say that it shall have no effect; when between the parties it was supposed to be as good and effectual to pass the estate, as a deed of bargain and sale should be. * * * * Now if the releasor is seized so as not to sell a pretended title, there can be no reason why his deed of quit-claim should not pass the estate. If he is not seised, and the releasee is not in possession, then nothing passes by the deed; though it may then operate as an estoppel against the releasor. We think it immaterial, whether this deed is to operate as a

gift, a bargain and sale, or a covenant to stand seised; it is sufficient that it passes the estate."

But it is said that the instrument cannot operate as a bargain and sale for want of a consideration. Such a deed, at common law, requires a pecuniary consideration, though none need be expressed. 4 Cruise, 110; *Jackson* v. *Fisk,* 10 John. 456; *Underwood* v. *Campbell,* 14 N. H., 393; *Rogers* v. *Hillhouse* 3 Conn., 398. Not only so, but the seal imports a consideration. Williams on Real Prop., 143; *Watson* v. *Mansfield,* 2 Iowa, 111. Nor has the rule of pleading at common law, that an action of assumpsit, a release or discharge must be specially pleaded, an application in this case. Nor is it true, that if the pleader has called it a release, when in fact it is something else, the instrument shall not have effect according to the intent of the parties. In this instance the pleader sets out the instrument, and in the answer, states what he understands to be its legal and equitable force and effect, If it operates in any way, whether as a deed of bargain and sale, a covenant to stand seised, or in any manner is effectual to pass the title, respondents thereto have the benefit of it. There is nothing in the state of the pleadings to prevent it.

If, however, the deed is not to be upheld as one of bargain and sale, why not as a covenant to stand seised to the use of the grantee, and thus pass the freehold. It is said that the consideration—a pecuniary one being out of the way— is not sufficient. And the argument is, that at common law this consideration is "near blood relationship between the parties or a contemporaneous or prospective marriage;" that the relation of father and daughter-in-law, is not sufficient, and that the deed must therefore fail. Now there are not wanting authorities to uphold this deed on this ground. The case of *Bell* v. *Scammon,* 15 N. H., is in no respect different from this, except that there the grantee was the son-in-law; here the daughter-in-law. In this case there

was no issue. In that, one child who died before the execution of the deed. In that case GILCHREST, J. says, "the boundaries which exclude persons as too remote to be within its influence, have never yet been defined." In Shep. Touch. 511, 12, it is said that such a deed will be good, if made to the intended wife of a cousin. If so, the wife of a deceased son would seem to be equally sufficient. The case of *Gale* v. *Coburn*, 18 Pick., 397, differs from this in the fact that the grantor was the grand-father of two children of the grantee, then living; the grantee being a son-in-law. The case of *Corwin* v. *Same*, 2 Seld., 342, cited by counsel, holds a contrary doctrine. Is not reasoned however, and no authorities are cited in support of the doctrine. In *Jackson* v. *Sebring*, 16 John., 515, however, the whole doctrine is very fully discussed, and under the authorities there cited, and the principles there recognized, the consideration would not be sufficient to support this instrument as a covenent to stand seised. And, indeed, the weight of the authorities are against it. Whether they adopt the most reasonable and just rule, we very much doubt.

One suggestion more before leaving this part of the case. This is a bill in equity to settle and quiet the title to these lands. If there was a valuable or pecuniary consideration, then the deed would be good, if not otherwise objectionable as a contract to convey, and especially, if possession accompanied it. This rule was recognized in *Switzer* v. *Knapps*, 10 Iowa, 72. And *quere*, if a portion of these lands constituted the homestead of a son, would not the possession and interest of the widow therein be sufficient, since the adoption of the Code of 1851, to support a release, under the strict common law rule?

Finally, it is urged that this instrument is void for want of a description of the land conveyed. And here it is important to keep in view the relation of the parties and the

purpose designed to be accomplished. The father was the heir to all of his son's estate, subject to the widow's dower, and the payment of debts. He was willing to relinquish and assign his interest in that estate, of every character to the widow. What was the consideration or motive prompting is not disclosed, and we can only presume that it was sufficient.

In the absence of fraud, of evidence that the party acted in ignorance of his .rights, the nature and extent of the interest and estate he was thus relinquishing, or some other fact of a like nature, a conveyance should not in equity be held inoperative for want of a specified description of the property real and personal. If he was conversant of his rights he could sell by general description. *Underwood* v. *Campbell*, 14 N. H., 393; *Smith* v. *Pendell*, 19 Conn., 107; *Jackson* v. *DeLancey*, 11 John., 364; *Litchfield* v. *Cudworth*, 16 Pick., 23.

Affirmed.