Good v. Norley.

GOOD v. NORLEY *et al.*

## I. Per BECK, J.; COLE, J., concurring.

1. Administrators' sales: JURISDICTION: NOTICE. A proceeding by an administrator, under our statute, to sell the real estate of the decedent for the payment of debts due by the estate, is not a proceeding *in rem*, but one in its nature adversary, and a sale made thereunder, in the absence of notice of any kind to the parties interested, is not merely voidable, but absolutely void, for want of jurisdiction in the court making the order of sale.

2. ── INFANT HEIR : APPEARANCE BY GUARDIAN *ad litem :* WAIVER OF NOTICE. In order to render an administrator's sale of real estate valid as against an infant heir, he must have been served with notice of the proceeding, as provided by the statute, and an appearance and answer by a guardian *ad litem*, whom the probate court has appointed, without such notice having been given to the infant heir, will not confer upon the court jurisdiction of his person, and the proceeding will, as to him, be void.

3. ── The court has no jurisdiction in such case to appoint a guardian *ad litem*, unless there has first been a complete service on the minor.

4. ── STATUTE OF LIMITATIONS : VOID SALES. The limitation contained in section 1356 of the Code of 1851 (Rev. § 2388), which provides that "no action for the recovery of any real estate sold by an administrator can be sustained by any person claiming under the deceased, unless brought within five years next after the sale" does not apply to, and will not bar, a sale that is absolutely void for want of jurisdiction in the court to order it.

## II. Per DILLON, Ch. J.; WRIGHT, J., concurring.

5. ── The five year limitation provided by the statute applies to sales that are invalid as well as to those where the proceedings are merely defective, and the action in the present case was barred thereby. WRIGHT, J., holding, in addition, that, under the facts of the case, the probate court had jurisdiction of the parties, and was authorized to order the sale.

III. Per CURIAM.

6. —— This court, being equally divided in opinion, the judgment of the court below sustaining the title derived through the administrator's sale in the present case, is affirmed by operation of law.

*Appeal from Polk District Court.*

THURSDAY, OCTOBER 21.

ACTION IN CHANCERY. — The facts disclosed by the record are substantially as follows: In the month of September, 1851, one John Norley died intestate, seized in fee simple of the real estate described in the plaintiff's petition, and leaving as his widow the defendant, Sarah Ann Fifield, then Norley, and the defendant, Mary Norley, then an infant under the age of two years, his only child. April 6, 1852, John M. Perry, his administrator, as such, filed in the County Court of Polk county a petition for an order to sell real estate, including the parcel in controversy, to pay debts, making the widow, whose dower had been previously assigned in other property of the decedent, and said infant child, parties defendant thereto, and asking the appointment of a guardian *ad litem* to said infant defendant; whereupon the court appointed one Thomas McMullen such guardian; and the said infant, by said guardian, and said widow, by Curtis Bates, Esq., assuming to act as her attorney, *waiving* notice, forthwith *appeared* and filed answers consenting to the sale as prayed for; and afterward, but on the same day the petition was filed, " the matters and things contained in said petition coming on to be heard, and the court being fully advised in the premises," a sale was ordered. May 1, 1852, in pursuance of this order, the administrator sold all of the real estate included therein in *two* parcels; the one in controversy to plaintiff, the other to one Campbell. September 1, 1852, the court

approved "deeds" therefor. Plaintiff paid full value for the premises in controversy, and has been in continuous adverse possession thereof ever since the sale. He claims that they were conveyed to him by the administrator, but that the deed was lost before record while in the recorder's office for that purpose, and that the same is still lost. He asks to have his title quieted as against all claims of defendants, including any claim of dower by said widow.

The defendant, Mary Norley, by answer and cross-petition, contests the validity of the sale on the assumed want of jurisdiction in the County Court to order the same. She also controverts the allegations of the petition as to the making and loss of said deed. The other defendants made default.

Decree in District Court for plaintiff, in accordance with prayer of petition. Defendant, Mary Norley, appeals.

*Polk, Hubbell & Barcroft* for the appellant.

*Phillips, Gatch & Phillips* and *Thos. F. Withrow* for the appellee.

BECK, J. — The questions presented upon the record before us are of very great importance, and involve principles that may be of frequent application in the adjudication of titles to lands by the courts of this State. They require the construction of a statute which has been in force since the Code of 1851, providing for the sale of the real estate of intestates, under which lands of great value throughout the State have been sold, and upon which titles thereto rest. In view of the fact that the statute is still in force, and future proceedings affecting property will be governed by it, the importance of the questions is greatly magnified.

Good v. Norley.

There are two questions affecting the jurisdiction of the court ordering the sale of the land in controversy, and another relating to a statutory limitation of the suit, which, we find, necessarily arise for determination upon the record. We will notice them in the order they are presented in argument by plaintiff's counsel.

I. The Code of 1851 provides that, in case the personal effects of an intestate are found inadequate to satisfy the debts allowed against his estate, a sufficient portion of the real estate may be sold for that purpose. The sale is ordered by the County Court, and the following sections point out the manner of conferring jurisdiction upon that court in such cases. " 1343. Application for that purpose can be made only after a full statement of all the claims against the estate, and after rendering a full account of the disposition made of the personal estate." " 1344. Before any order to that effect can be made, such notice as the court may prescribe must be given to all the persons interested in such real estate."

1. ADMINISTRA-
TORS' SALES :
jurisdiction :
notice.

The sections following direct as to the appraisement, manner of sale, etc., etc. Those above quoted alone bear upon the questions we are called upon to consider.

The notice required by section 1344 was not given, as clearly appears by the record, and we are precluded from exercising the presumption that it was given. This question therefore arises : Did the application provided for by section 1343, without the notice, give the court jurisdiction ?

The plaintiff insists that the proceeding authorized by the statute is not in its nature adversary, but is a proceeding *in rem*, and, in the absence of a notice of any kind to the parties interested, is, at most, but voidable and not void.

It is first argued by plaintiff's counsel that the notice required is not intended to give the court jurisdiction of the parties interested, because the notice provided for is

not sufficient for that purpose, being only " such notice as the court may prescribe." The language here quoted from section 1344 may be construed to apply to either the substance of the notice, or the time and manner of its service, or to both ; whatever may be its precise meaning in this respect it is not important now to determine. The jurisdiction of the person of a party to a proceeding in a court is acquired by process, original process, as it is called. The substance and form of the process must conform to statutory provisions. It may be a subpœna, summons or other writ attested by the judge or judges of the court, or any officer thereof, or, as in our State, a notice signed by the plaintiff. The time and manner of its service are also matters of statutory regulation. In proper cases the service may be by publication, or by copy left at the dwelling-house of the defendant, etc., etc. If, in its wisdom, the legislature has left the form, substance, and time and manner of service of process under the control of the court out of which it issues, it certainly has that power, and process so provided for possesses precisely the same character as though it were the creation of express statutory provisions. In short, the legislature has power to provide for process and prescribe its substance and the manner and time of service, or to clothe the courts with that power. *Mason* v. *Messenger and May*, 17 Iowa, 268; *In re Empire City Bank*, 18 N. Y. 199. Of course the process so provided must be within proper restrictions, and not operate to defeat the very object for which it issues, namely, notice of the pendency of the proceeding.

We are not required here to examine the section above quoted with a view to determine the character of the notice therein contemplated, whether it be addressed to the parties interested by name, etc., etc., as, it appears from the record, no notice of any kind was given. It is evident that, under the section, a notice may be issued

that, in its fullest sense, would possess the character of process. We conclude therefore that the position of the plaintiff's counsel, above stated, is untenable.

II. Is the proceeding, under the statute above quoted and referred to, an action *in rem?* If it is not an adversary proceeding, but is *in rem,* the filing of the application for the sale of the lands, without other notice, clothed the court with jurisdiction. This is a question of no small difficulty, and its solution is not free from doubt. In arriving at the conclusion which we adopt, we have been less aided by precedents and authority than by principle and sound reason. There is great conflict among the authorities upon this question, many holding that proceedings of this character, to subject lands of minors and of intestates to sale, under order of courts of probate, or courts exercising probate jurisdiction, are strictly *in rem.* It is so held in several instances, under statutes which require notice to be given to parties interested, quite as explicitly as does the statute under which the proceedings were had which resulted in the sale of the land in controversy. See *Gregon's Lessee* v. *Astor,* 2 How. 338; *McPherson* v. *Cuneliff,* 11 Serg. and Rawle, 432; *Perkins* v. *Fairfield,* 11 Mass. 227; *Salstonstall* v. *Riley,* 28 Ala. 164; *Sheldon* v. *Newton,* 3 Ohio St. 502; *Robb* v. *Lessee of Irwin,* 15 Ohio, 698; *Lessee of Paine* v. *Morland,* 15 Ohio, 442; *Benson et al.* v. *Cilley et al.,* 8 Ohio St. 614; *Tongue* v. *Morton,* 6 Harris and Johnson, 23; *Boiden* v. *The State,* 6 Eng. 519; *Rice et al.* v. *Parkman,* 16 Mass. 328; *Soheir* v. *Mass. Genl. Hospital,* 3 Cush. 487; *Wilkinson* v. *Leland et al.,* 2 Pet. 657. See also 7 Ohio, 201; 12 id. 272; 9 id. 119. In these cases the statutory requirements in regard to notice, when such requirements exist, are held to be directory, and not as providing for or regulating the process whereby the court acquires jurisdiction of the persons of the

parties interested in the lands sought to be sold. It is, therefore, held, that the omission of the notice, which is not a jurisdictional matter, at most, is but an error, and does not render the proceeding void as against a collateral attack, or defeat the title to property acquired thereby, in the hands of purchasers.

On the other hand, it is held that, in like proceedings, jurisdiction of the persons of those interested in the land sought to be sold, as well as of the subject-matter, is necessary to the validity of the adjudication of the court under which the sale is made; and, therefore, without the notice or process required by the statute, the order of the court and the sale made in pursuance thereof are void. *Babbitt* v. *Doe*, 4 Ind. 356; *Doe* v. *Anderson*, 5 id. 34; *Doe* v. *Bowen*, 8 id. 198; *Sibley* v. *Wells*, 16 N. Y. 185; *Bloom* v. *Burdick*, 1 Hill, 140; *Sheldon* v. *Wright*, 1 Seld. 518; *Rigney* v. *Coles*, 6 Bosw. 486; *Corwin* v. *Merritt*, 3 Barb. 341; *Stark* v. *Brown*, 12 Wis. 572; *Setzman* v. *Pacquette*, 13 id. 291; *Gibson* v. *Shaw*, 17 id. 197; *Dakin* v. *Hudson*, 6 Cow. 222; *French* v. *Hoyt*, 6 N. H. 370. An attempt to reconcile these conflicting authorities would be vain. It will also be found, indeed, that cases from the Ohio reports, which are greatly relied upon by plaintiff's counsel, are not altogether in harmony, and the prevailing doctrine, that the proceedings under the earlier statutes were *in rem*, is sometimes doubted or denied.

The question has not been determined by this court, though three cases decided here are cited by plaintiff's counsel in support of the doctrine he advocates. *Cooper* v. *Sunderland* (3 Iowa, 114), it is claimed, sustains the doctrine. A single remark of the judge delivering the opinion, in favor of the doctrine, hardly seems to justify the citation of the case for that purpose. But, in the proceedings brought in question in that case, there was a notice

which was held sufficient to give the court jurisdiction. The point was not in the case, and of course not decided. *Morrow* v. *Weed* (4 Iowa, 89) and *Long* v. *Burnett* (13 id. 34) are also cited by plaintiff. They are, if possible, further from his support than *Cooper* v. *Sunderland.* The first expresses a doubt upon the subject, and the second fails to state, in discussing the question of jurisdiction, that notice is necessary in order to acquire jurisdiction of the persons of those interested adversely. But in the proceedings in question in *Morrow* v. *Weed* there was, as the court held, a sufficient notice; and in *Long* v. *Burnett* the point upon which the case turns is want of jurisdiction of the subject-matter before the court in the proceedings under which the title to the lands were claimed, the court holding that a special administrator, with power under the statute to take possession and preserve property until a regular or general administrator could be appointed, could not be authorized by the probate court to sell real estate of the decedent.

In no case in this State has a guardian's or administrator's sale been held valid unless the record of the proceedings of the court ordering the sale disclosed the fact that the notice required by statute had been given. In *Little* v. *Sinnett* (7 Iowa, 324), *Van Horn* v. *Ford* (16 id. 581), *Pursley* v. *Hayes* (22 id. 11), *Shawhan* v. *Loffer* (24 id. 217), in addition to the cases above cited, and probably in some other cases that have escaped our attention, it is held that notice is sufficiently shown by the record in the respective cases to clothe the court, in each particular case, with jurisdiction of the persons of the parties interested adversely to the exercise of the power. In *Thornton* v. *Mulquinne* (12 Iowa, 549), the want of evidence of notice of the pendency of the petition is assigned as one ground for holding the proceedings void.

Although the precise point has not been ruled in this

State, the decisions, so far as they bear at all upon it, are against the doctrine advocated by plaintiff, though, we concede, not sufficiently in point to settle the question. As we have remarked, the authorities of other States are not in harmony. We are, therefore, left for the solution of the question to principle and sound reason.

It is not necessary to inquire in this connection concerning the legislative power to authorize proceedings *in rem*, or *ex parte* proceedings, whereby property or rights may be affected by orders or judgments of courts without process or notice to the persons who are interested adversely to such judicial proceedings. Admitting that in proper cases such proceedings may be authorized by statute, it must be conceded that they ought not to be favored by the law. No principle is more completely accordant with justice than that one which prohibits the courts adjudicating upon the rights of a citizen, unless he be duly notified of the pendency of the proceeding against him, and that judgments rendered without such notice are void. When such notice is held not necessary to confer jurisdiction, it is obvious that wide doors are open to fraud, injustice and the abuse of judicial power. Proceedings *in rem* or of an *ex parte* character are unusual under our system of jurisprudence, and seem only to be authorized in cases where demanded by justice, because rights cannot be enforced without remedies of that character. In view of these well-established principles the courts ought not, by construction of statutes, to dispense with provisions therein requiring notice or process to parties interested, nor should they hold such provisions simply directory in their nature, and not matters whereby jurisdiction is conferred. Such construction gives validity to judgments of courts, though they be wanting in the very elements of life and vitality. Unusual remedies ought not, by construction of a statute

when not clearly intended by the legislature, to be sanctioned by the courts; nor ought unusual and doubtful proceedings to be created in the same way. The courts should rather presume, unless otherwise clearly expressed, that in all proceedings of a judicial character provided for by statute, it is the legislative intention that the general course of the law shall be pursued, and that the validity of such proceedings shall depend upon the proper acquisition of jurisdiction both of the subject-matter of the controversy and the persons of those interested therein.

Section 1344 of the Code of 1851, heretofore quoted, expressly provides that, before any order for the sale of the intestate's lands can be made by the court, a notice to all persons interested shall be given. Here is an absolute requirement of notice — a term which, under that Code, designates original process, and a prohibition upon the exercise of power until that process has been served. It seems clear that it was the legislative intent to clothe the court with the power of adjudication only upon the acquisition of jurisdiction of the persons of those interested therein. A different construction of this provision would be in conflict with its language, and contrary to the reason and spirit of the enactment.

It is urged that the proceeding authorized by the Code for the sale by the administrator of the intestate's land is not in its nature adversary, having for its object simply the transmutation of a trust fund from real to personal estate. It is evident that parties interested in the land as heirs, or others, can appear and contest the propriety or legality of the order for the sale of the land, on the ground that their rights or interests would be prejudiced thereby; and it is equally clear that there may be in such proceedings conflict of interests and rights that require adjudication by the court. So far, then, as

the rights and interests of the parties are concerned, the proceeding is in fact adversary. The term, *adversary proceeding*, however, is used to distinguish ordinary proceedings in courts from those that are *in rem*, and applies to the form of the proceedings and not to the rights affected. It is said that a proceeding *in rem* is not adversary, by which it is meant that it is not in form adversary. In these proceedings rights are often contested, and conflicting interests adjudicated; it is evident, therefore, that the nature of the rights affected does not determine the character of the proceedings. In order to determine whether proceedings are *in rem* or adversary, we must look to the statutes that authorize them, and not to the nature of the rights affected thereby.

III. Did the appearance and answer of the guardian *ad litem* confer upon the court jurisdiction of the person 2. — infant heir: appearance by guardian *ad litem;* waiver of notice. of defendant, the infant, whose lands were sold by the order of the probate court? We answer negatively. It is ruled in *Allen v. Saylor* (14 Iowa, 437), in a statutory proceeding to partition lands under the Code of 1851, "that, unless there is a complete service upon the minors, the court has no jurisdiction to appoint a guardian *ad litem*, or to make any order that might prejudice their rights." We have above held that the proceeding here in question is adversary, and, as the case just cited was decided under the operation of the Code of 1851, the ruling therein is directly in point upon the question under consideration.

But, inasmuch as that case was before this court upon appeal, and the ruling was not necessary to its decision, in the view that if the defect had been held a mere irregularity, not affecting the jurisdiction, it would have required the reversal of the case, we will briefly proceed to examine the question in the light of principle and

authority, and, so far as this court is concerned, as *res integra*.

The proceedings being statutory, the court could acquire jurisdiction of the person of the parties interested in the subject-matter, as well as of the subject-matter itself, only by a compliance with the statute, which directs notice shall be given to the parties interested in the land which the administrator asks in his application may be sold. The object of the notice is to advise the parties of the pendency of the proceedings, and provide an opportunity for the exercise of their right of being heard in defense and protection of their interests. If the object of the notice is secured by the appearance of the parties, the end of the law is attained. Hence, it is probable an appearance without notice would give the court jurisdiction. But such appearance, when not by the party himself, must be by one authorized to make it, and for one who can be so represented. The Code of 1851, section 1689, provides that "the court may appoint a guardian *ad litem* to defend for a minor who has no other guardian." The powers and duties of such a guardian are not elsewhere prescribed by statute. At common law, a guardian *ad litem* is one appointed for an infant to defend in an action brought against the infant, and his duties and powers are confined to the defense of the suit. Bouv. Dic.; Co. Litt. 886, note 16; 135, 136, note 1.

It appears that his duties and powers are those that pertain to the *defense of the suit* in the progress of which he is appointed. He is not empowered to appear, to waive the service, or to confess the matter charged against the infant. *James* v. *James*, 4 Paige Ch. 115. Thus careful is the law of the interest of an infant and of his fundamental right to a day in court.

The appearance of the guardian *ad litem* was based

upon a judicial act of the court, namely, the appointment of such guardian. Now, the appointment could not have been made unless the court had jurisdiction of the person of the infant; but it possessed no such jurisdiction, for no process or notice was served upon the infant. Here, then, we have jurisdiction to make the order of sale claimed by reason of another judicial act which was itself *coram non judice*.

But it may be urged that the court acquired jurisdiction to appoint the guardian *ad litem* by the petition or application of the administrator. The answer to this is, that the acquisition of jurisdiction in such cases is not so provided for either by statute or the rules of the law. Such guardians are appointed to defend against suits, and, as we have seen, they are clothed with no other powers or duties. When appointed, a suit is pending and the infant is in court. In this case the proceeding was not pending as to the infant, for no process had been issued. The commencement of a suit is the service of notice or its delivery to the proper officer for service. Code 1851, §§ 1663, 1714. There is certainly no principle of law which will warrant the appointment of a guardian *ad litem* until the infant is served with process or is in court in person. A contrary doctrine will permit the court to acquire jurisdiction without process, by adjudications of which the party whose rights are thereby affected may know nothing, and when he has no day in court.

The argument based upon the tender years of the infant, who will have no benefit from process, even if served, is answered by the fact that the statute, in such cases, provides that service shall also be made upon the parents, guardian or person having custody of his person, thus carefully making provision that those who are supposed to be his protectors shall be fully informed of the proceedings against him. We are unable to conclude that the

Good v. Norley.

notice provided for by statute may be dispensed with, and jurisdiction acquired in a way contrary to principle and sound reason, open to abuse, and unknown to the practice of the courts of the State.

Many cases are cited by plaintiff's counsel which are claimed to support the view they urge.* There are many others which, it is insisted, clearly maintain a contrary doctrine.† An extended examination and discussion here, of these authorities, would prove unprofitable. They are in conflict and cannot be reconciled. Such being the condition of the authorities, we are left to principle and reason whereon to base our conclusion, and we are satisfied it is well supported.

IV. It is insisted that this action is barred by section 1356 of the Code of 1851. This section is in these words:

4. — statute of limitation: void sales. "No action for the recovery of any real estate sold by an executor can be sustained by any person claiming under the deceased, unless brought within five years next after the sale." We are not without precedent to guide us in the solution of the question here raised. A provision similar, if not identical in its effect, received construction in *Pursly* v. *Hayes* (22 Iowa, 26), which was a proceeding in chancery, to set aside and declare void certain proceedings of the County Court, whereby the guardian of plaintiff was empowered to sell

---

*Lessee of Ewing* v. *Higbee*, 7 Ohio, 202; *Ewing* v. *Hollister*, id. 482; *Robbs' Lessee* v. *Irwin*, 15 id. 701; *Snively* v. *Lowe*, 18 id. 370; *Sheldon* v. *Newton*, 3 Ohio St. 504; *Lessee of Nelson* v. *Moore*, 3 McLean, 321; *Ray* v. *McIlroy*. 1 A. K. Marsh. 613; *Banto's Heirs* v. *Calhoun*, 2 id. 167; *Bustard* v. *Gates*, 4 Dana, 436; *Bank of the United States* v. *Cockran*, 9 id. 395; *Wrisleys* v. *Kenyon*, 28 Vt. 6; *Preston* v. *Dunn*, 25 Ala. (N. S.) 512.

†*Babbitt* v. *Doe*, 4 Ind. 356; *Doe* v. *Anderson*, 5 id. 34; *Robbins* v. *Robbins*, 2 id. 74; *Doe* v. *Brown*, 8 id. 198; *Guy* v. *Pierson*, 21 id. 21; *Hough* v. *Canby*, 8 Blackf. 301; *Hoover* v. *Doe*, 1 Ind. 130; *More* v. *Stark*, 1 Ohio St. 370; *Sturges* v. *Longworth*, id. 554; *Benson* v. *Cilley*, 8 id. 604; *Collard's Heirs* v. *Groom*, 2 J. J.Marsh. 487; *Daniel* v. *Hannagan*, 5 id. 48; *Dodge's Admr.* v. *Foulk's Admr.*, 11 B. Monr. 179; *Loyd's Admr.* v. *McCauley's Admr.*, 14 id. 535; *Boody* v. *Emerson*, 17 N. H.; *Johnson* v. *Hainesworth*, 6 Ala. 443; *Day* v. *Kerr*, 7 Mo. 426.

the land, the title of which had been in plaintiff, and
divested by the guardian's sale.    The defendant con-
tended, that, under section 1508 of the Code of 1851, it
was too late to question the validity of the sale, and that
the action of plaintiff was thereby barred.    The section
is in these words : " No person can question the validity
of such sale (guardian's sale) after the lapse of five years
from the time it was made."    In discussing the effect of
the section upon a sale made by one without authority,
acting as guardian, the court use this language : "If made
by one having no authority nor semblance thereof, it (the
sale) does not come within either the letter or spirit of
the statute.   *    *    For if the heir, after five years
(without reference to the question of possession), is con-
cluded by a sale made by one acting entirely without
authority, or pretense thereof, then we know of no clearer
case of judicial legislation ; no case which would more
flagrantly violate the fundamental provision securing all
persons in life, liberty and property."

This argument applies with equal force to the case
before us.    The administrator had no authority to make
the sale, because all the proceedings upon which it is
based are *coram non judice* — void for want of jurisdic-
tion in the court wherein they were had.    Without a
valid adjudication of a court having jurisdiction, the
proceedings and sale thereunder are absolutely void, and
of no more binding force than a sale made by one not an
administrator and without pretense of authority.    This
is obvious from the following considerations.    There are no
degrees in the *validity* or *nullity* of judicial proceedings
and sales under them.    If absolutely void for one reason
they cannot be *more void* for another cause.    If void,
they are *nothing* — as though they did not in fact exist.
The term " voidable," as applied to such proceedings, does
express a degree of validity or nullity.    It expresses a con-

dition which may be declared void by proper proceedings, but when attacked in a certain manner is held valid. Applying these views to the ruling and reasoning of the court in *Pursley* v. *Hayes*, above quoted, and they are apparently and evidently correct; that case is in point, and direct authority upon the question before us.

In *Pursley* v. *Hayes* the opinion does not pass positively upon the effect of the statute in a case where one claiming by virtue of a void sale takes and holds possession under it, but the argument is quite conclusive upon that point. It is as follows : " Will this statute estop the heir from questioning the validity of such a sale? If so, then is it not because the party is to be treated as in possession, under color of title, and hence protected against attack? And yet it would seem anomalous to say that another could obtain color of title to my property without notice to me of the proceedings upon which he bases his claim."

To my mind, however, an equally strong argument is drawn from the words of the section itself. In the use of the words " sold by an executor," the legislature evidently referred to valid sales, or sales that are voidable or irregular on account of want of conformity to the law, as distinguished from void sales. As we have seen, a void sale is, in law, no sale ; it is as utterly void if made by an executor under an order of a court acting without jurisdiction as if made without any order, or by one who in fact was not an executor. The jurisdiction of the court granting the order is the vital principle — the *heart* of the whole proceeding — without which it can no more terminate in a valid sale than can an animal body exist in the absence of the very seat of life. Without the order of a court having jurisdiction, however formal the sale may have been, however strictly the directory requirements of the statute concerning it may have been observed, the sale is but a mere pretense, and is in law no sale

We are to presume that the legislature understood the language of the law, and that when they used the words "*sold*" and "*sale*," they meant acts and things that were recognized by the law, and not those that are regarded as absolute nullities — as *nothing*.

It is said, that, unless the statute is made to apply to such cases as the one under consideration, it will be inoperative; that good titles do not need its support, and that, if it will not support a void title, then is it of no avail, and it is by construction annulled. The argument is completely answered by correcting the assumed facts upon which it is based. As a matter of fact there may be many defects in a title, other than those which are of a jurisdictional character and render it void, which in law will defeat recovery under it. But few defects render a title, based upon judicial proceedings, void; they are exclusively of a jurisdictional nature. Many defects and irregularities will defeat recovery thereon, yet they are not thereby rendered void. In the case of an administrator's sale, the deed may be defective in form, or may not have been approved as required by statute, and many other provisions and requirements of the law may not have been observed, whereby recovery would be defeated. But there was a valid sale under proceedings of a court having jurisdiction, and in such cases the statute would come in aid of the defective title.

It is also said that "it is the infirm and defective title, the one that could otherwise not stand the test of an action by the heir to recover, which was intended to be cured" by the statute. To this proposition I assent, and I have just pointed out that this kind of titles the statute is designed to aid. An "infirm and defective title" is a very different thing, as we have just seen, from a void title. The first is a *title*, the second is *no title* at all. The first may grow into a perfect title, for it has the germ

Good v. Norley.

of life in it; the second can never become a title, for it wants the life, the essential element of a title.

The result of my views is, to me, more satisfactory, because, as I conceive, it is a construction of the statute in question in harmony with justice, while the one sustained by the contrary view would produce extremely harsh and unjust results. The construction I give the statute more nearly accords with other provisions limiting actions for the recovery of real estate. If my lands are alienated by a sale upon a judgment void for want of jurisdiction, my right to recover them against the purchaser will not be barred by the statute of limitation until the lapse of ten years. Under the construction against which I contend, if the lands of an infant of the age of one year be sold under an administrator's sale, upon an order of a probate court that never acquired jurisdiction of the person of the infant or of the lands, the order therefore being utterly void, an action to recover the lands from the purchaser is barred in five years, while the infant is of the tender age of six years. No reason can be given for a rule operating so harshly upon the rights of infants, who are usually regarded by the law with so much tenderness.

I admit the importance and necessity of repose and certainty in the titles of real estate, and that courts should, in proper cases, construe the law to that end. But there are other matters that the law regards as of equal and higher importance; they are justice and right. Titles should not repose under protection of doctrines dangerous to these. The argument based upon the certainty and repose of titles is of no weight in any case when they rest upon injustice, nor when the rules upon which they are sought to be sustained are not in harmony with the principles of the law and the promotion of the ends of justice.

Good v. Norley.

In my opinion, the judgment of the District Court should be reversed.

COLE, J. — I concur with Mr. Justice BECK in his conclusion, and, in my opinion, there is one point bearing upon the question of the statute of limitations which has such a controlling influence with me that it ought to be stated. The statute, it will be seen, makes the lapse of time simply a bar. While most, if not all, general statutes of limitation require not only lapse of time, but adverse possession also; and many of them require *a color of title* upon which to ground the adverse possession. Now, I think, where a color of title is required in order to support an adverse possession under the statute, that a void title — that is, a title acquired under a formal judicial order, where the court acquired no jurisdiction (for want of service, or other thing), will be sufficient. But, that where the statute makes the mere lapse of time constitute a bar, there the party relying upon it must have, at least, a voidable title, and that a title wholly void will not do. Doubtless the cases in 13 Indiana and 13 Howard, 476, and other cases bearing on this point cited in the foregoing opinions, will find their support in this distinction.

DILLON, Ch. J. — Conscious of its great importance, both to the parties and in view of the principles involved, the court has given to this cause a most careful consideration. It is, perhaps, proper to say to counsel, that it has been held over until this time in order that the requisite investigation of the authorities referred to by them in this State and elsewhere might be made. Each judge, in succession, has for himself gone over the whole field of authorities cited by counsel, and made such additional examinations as seemed likely to afford any satisfactory

guide to his inquiries. My examination and reflection have produced, in my own mind, a clear conviction that the plaintiff's title is protected by the special statute of limitations applicable to administrator's sales. Code 1851, § 1356; Rev. § 2388 hereinafter quoted.

On this ground alone I rest my judgment in this case. I do not, therefore, propose to go over the wilderness of cases relating to administrator's sales; to the nature of the proceedings; whether adversary or *in rem*, or *quasi in rem*; whether notice be essential to jurisdiction; and if so, whether in the case of infants it may be given to the guardian; whether the County Court is one of general or limited jurisdiction as respects such proceedings, and what presumptions attach to its actions and orders. The cases on all these subjects are very numerous and do not admit of being reconciled. It would be without profit to burden an opinion with a detailed discussion of them.

I shall make only such reference to the cases as tends to show the correctness of my view of the aforementioned statute of limitations.

At the bar I had always been accustomed to give, and to see given, notice of the application to sell, to the persons interested in the real estate proposed to be sold by the administrator. This practice naturally produced an impression that, in the case at bar, the sale could not be sustained, and that the title of the heir (aside from the statute of limitations) must prevail over that of the purchaser from the administrator.

Before examination my impression was that notice to the heir, or person interested in the land, either actual or by publication, or otherwise, as the court might prescribe was absolutely essential, was jurisdictional, without which any order for the sale was a nullity.

But when I came to trace out the history of the legislation on this subject in this State, and in others from

which this State has borrowed it, and to examine this legislation in the light of the decisions of the courts of those States, I must say that my previous opinion has been greatly shaken. As it is unnecessary to decide it, I leave, without any expression of opinion, the question whether the notice required by section 1344, of the Code of 1851, is jurisdictional in any sense, and, if so, whether it may not be sufficient to sustain a sale when collaterally attacked, even within five years, that the court appointed a guardian *ad litem* to appear and defend for the infant heir. See on the last point *Nelson* v. *Moore*, 3 McLean, 319; *Bustard* v. *Gates*, 4 Dana, 429; *Bank* v. *Cochrane*, 9 id. 395; *Day* v. *Kerr*, 7 Mo. 426; *Preston* v. *Dunn*, 25 Ala. 507, and cases cited; *Sheldon* v. *Newton*, 3 Ohio St. 494; *Benson* v. *Cilley*, 8 id. 614; *Coon* v. *Fry*, 6 Mich. 506.

The following cases relating to administrator's sales, and that, too, under statutes providing that *notice* of the application should be given in terms as strong as in our statute, if not stronger, hold that the proceeding is *in rem;* that the provision as to notice is directory; and that, if not given, it does not deprive the court of jurisdiction; and hence, an order for a sale, without such notice, or upon notice alone to the guardian, while irregular, and reversible on appeal, is not void, when collaterally attacked.

*Grignon's Lessee* v. *Astor*, 2 How. (U. S.) 319, 1844, leading case; following and approving *McPherson* v. *Cunliff*, 11 Serg. and Rawle, 422, 1824; *Salstonstall* v. *Riley*, 28 Ala. 164, 1856; *Wilkinson* v. *Leland*, 2 Pet. 627 (*arguendo*, per STORY, J.); *Sheldon* v. *Newton*, 3 Ohio St. 494, 1854, reviewing previous Ohio decisions; *Benson* v. *Cilley*, 8 id. 604, 1858; *Howard* v. *Moore*, 2 Mich. 226; *Coon* v. *Fry*, 6 id. 506, 1859; *Doe* v. *Harvey*, 5 Blackf. 487; *Thompson* v. *Doe*, 8 id. 336; *Norton* v. *Norton*, 5 Cush. 524, others to the same effect

might be cited. *Contra,* that notice is jurisdictional, *Babbitt* v. *Doe,* 4 Ind. 356, 1853 ; *Doe* v. *Anderson,* 5 id. 33, 1854 ; *Doe* v. *Bowen,* 8 id. 197 ; *Gibbs* v. *Shaw,* 17 Wis. 197 ; *French* v. *Hoyt,* 6 N. H. 370, 1833 ; and others holding the same view may doubtless be found.

In the case now before the court there was no fraud practiced on the infant heir. She was only two years of age, and notice of any kind to her would have been a useless ceremony for any purpose, since she could not have understood it, and since her own mother was a party to the proceeding, was represented by counsel, and is not shown to have been in any way adversely concerned to her child. The sale was ordered after appearance and consent by the mother and natural guardian, and after a guardian *ad litem* had been appointed to act for the heir. The plaintiff paid full value, received a deed from the administrator, which was approved by the court, and has been in continuous adverse possession of the property ever since 1852. The property meanwhile has doubtless greatly enhanced in value, and it will defeat the reasonable and just expectations of the plaintiff should he lose it at this distant day.

On no principle of justice has the heir, under such circumstances, a right which, in strength and persuasiveness, will at all compare with the right of the purchaser. Every fair mind will thus regard the relative claims of these two parties to this land. This would be so everywhere. But particularly ought this to be so in a new country, which, like ours, is rapidly developing, and where, as a rule, lands are rapidly augmenting in value. *Voorhies* v. *Bank,* 10 Pet. 449 ; *Shawhan* v. *Loffer,* 24 Iowa. Sound public policy is concerned in giving stability to titles acquired in good faith at administrator's sales. Unless such titles enjoy public and professional confidence, lands which it is necessary to sell to pay the

debts of the intestate or testator will bring very inadequate prices. This would result in the manifest injury of heirs in general. Unless such sales, when made in good faith by the administrator and under the order of the court, can be upheld, all the manifold evils of doubtful ownership will be the result.

This public policy, based upon the desire to quiet titles, to repress litigation, to encourage improvement, was obviously the reason why the legislature enacted, for titles acquired at administrator's sales, a special five years' limitation, without exception as to minors or non-residents.

This statute is in this language: "No action for the recovery of any real estate sold by an executor can be sustained by any person claiming under the deceased, unless brought within five years next after the sale." Code 1851, § 1356; Rev. § 2388.

If I should concede, which for the purposes of this case I do, that the failure to serve the heir with notice would have enabled her to avoid the sale made by the administrator if she had brought her action within five years, still I maintain that this objection, though it might have been available if made within the five years, comes too late if not made until after the lapse of that period.

In this case we have the following facts:

1. The death of the intestate owning the lands and the due appointment of an administrator.

2. An application or petition by the administrator for the sale of the real estate, making the infant heir and her mother parties defendant, and asking that a guardian *ad litem* be appointed to defend for the infant.

3. Appointment of such guardian, and his answer; also the answer and consent of the mother to the sale, no fraud or collusion being shown or imputed.

4. Order of sale made by the proper court; a sale for full value; sale and deed approved by the court; posses-

sion taken and kept by the purchaser for more than five years.

Under these circumstances, I am of opinion that this is a fitting case for the application of the statute of limitations, and that it operates to protect the purchaser's title; and this whether the statute requirement as to notice, contained in section 1344 of the Code, be directory only or mandatory.

This opinion rests not only upon the plain language of the statute, which broadly, and without making any exception, declares that "no action for the recovery of any real estate *sold by an executor* can be sustained by any person claiming under the deceased, unless brought within five years next after the sale," but finds no little support in the legislative history of the statute authorizing such sales, and in the language of the section (1344) relating to notice, and in the language of the previous statute of limitations respecting such titles. In the Blue Book, or Revised Statutes of 1843, chapter 10, page 706, related to the "sale of lands for the payment of debts by executors, administrators and guardians." This was in force down to the enactment of the Code of 1851.

The above-mentioned chapter 10 consisted of thirty-eight sections, to some of which reference will presently be made.

In tracing out the history of this statute, I found that it had been taken literally from the Michigan act as published in the Revised Statutes of Michigan of 1838, page 311. A prior statute of Michigan, different in effect, though not in substance, was the one which was before the Supreme Court of the United States in the well-known case of *Grignon's Lessees* v. *Astor*, before cited.

On further examination it was found that the Michigan act had been taken literally from the Massachusetts statute, section for section. It will be found in the Re-

vised Statutes of Massachusetts, 1836, chapter 71, page 452, and is also contained in the Revised Statutes of Massachusetts of 1860, chapter 102, page 510. Section 8 of this prior statute (Blue Book, page 707) related to notice of the administrator's application to sell, and is in these words :  " No license shall be granted (by the District Court or court of probate) until notice of the petition, and of the time and place of hearing the same, shall have been given to all persons interested in the estate, that they may appear and show cause why the same should not be granted; such notice to be served on them personally fourteen days, at least, before the time appointed for hearing the petition, or to be published for three weeks successively in such newspaper as the court shall order; *provided, however,* if all the persons interested signify, in writing, their assent to such sale, the notice may be dispensed with."

This was superseded by section 1344 of the Code of 1851, in these words :

" Before any order to that effect (that is for a sale of lands) can be made, such notice as the court may prescribe must be given to all the persons interested in such real estate."

These two provisions are alike in prescribing that " notice shall be given to all persons interested in the real estate" proposed to be sold.

And if there is any difference in the two statutes respecting the importance attached to notice, that difference is in favor of the former statute.

Now the courts of Massachusetts and of Michigan both hold that proceedings under this statute are not like ordinary suits at law against a minor personally, but are in the nature of proceedings *in rem* and not *in personam*. *Holmes* v. *Beal*, 9 Cush. 223 ; *Norton* v. *Norton*, 5 id. 524; *Arnold* v. *Sabin*, 1 id. 525 ; *Wilkinson* v. *Leland*,

Good v. Norley

2 Pet. 627, and remarks of STORY, J.; *Howard* v. *Moore*, 2 Mich. 226; followed in *Coon* v. *Fry*, 6 id. 506.

And it has been distinctly asserted by the Supreme Court of Massachusetts, that it is not necessary to ascertain in advance and name all persons interested, but that public notice of the application under section 8 may be given to all persons interested. *Norton* v. *Norton*; *Arnold* v. *Sabin*, just cited.

This is undoubtedly a proper construction of the statute on this point, and goes very far to show that such proceedings, if not strictly *in rem*, are yet not like ordinary adversary actions in which the party proceeded against is always named in the notice, whether the service of such notice be actual or constructive.

Construing the Michigan statute the court held, in the two cases above cited from that statute, that if the decedent was an inhabitant of the county where the premises were situate and if letters of administration were granted by the proper court, and the proper court made the order to sell, the purchaser need look no further. The following is extracted from the opinion in *Howard* v. *Moore*, *supra*:

" The purchaser is not bound to look behind the license for any other purpose than to see that it was granted by the probate court of the proper county, and that the person to whom it was granted was the administrator. It is a proceeding *in rem* and not *in personam*. The administrator represents the land. The action of the court operates on the estate, not on the heirs of the intestate; the purchaser claims not their title, but one paramount."

I make these citations and extracts, not for the purpose of approving or disapproving the doctrine asserted as to the nature of the proceeding as one *in rem*, but to show what was, probably, the intention of the legislature where this view of the statute is taken in the subsequent

section, as to the limitation of actions for the recovery of property sold by administrators.

In the Iowa Blue Book, as in the Massachusetts and Michigan acts, was this provision as to limitations :

" Section 35. No action, for the recovery of any real estate, sold by an executor or administrator, under the provisions of this chapter, shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within five years next after the sale ;" then follows a similar limitation as to guardians' sales, and this is followed by an exception from the statute, of non-residents and minors, who have five years after their return or the removal of the disability in which to bring action.

In 1851, this section was superseded by section 1356 of the Code of Iowa, which is in these words :

" No action for the recovery of any real estate sold by an executor can be sustained by any person claiming under the deceased, unless brought within five years next after the sale."

And in the Code of 1851, the limitation as to guardians' sale is in this language :

" Section 1508. No person can question the validity of such sale after the lapse of five years from the time it was made." The provisions as to limitation in the two statutes are just the same, except that the Code omits the exceptions as to minors and non-residents contained in the prior statute. The purpose of this omission is manifest, viz. : to give still greater security to sales of this character. And such was the purpose of the provisions in the statute of the States from which the Iowa act was borrowed, as will be seen by referring to the cases before cited. *Howard* v. *Moore, supra ; Holmes* v. *Beal, supra.*

In my opinion, the five years limitation thus provided

extends to sales which would be considered invalid, as well as those which would be considered valid.

Indeed, it is the infirm and defective title, the one which otherwise could not stand the test of an action by the heir to recover, which was intended to be cured. A valid sale and a good title need not the remedial aid of any such statute. And if, in the case before us, the title of the purchaser from the administrator would have failed if attacked within the five years; yet, after that, its defects and infirmities were cured, and it was made whole by the healing touch of the statute.

The intention of the legislature to give stability to such titles, and to give a broad scope to statutes of limitations, is made more apparent when it is considered that this is a special statute on this subject; and that, without it, the heir would have had, under the general statute of limitations, ten years in which to bring his action (an effect which the legislature wished to avoid), and, in addition, one year after attaining his majority (Code 1851, §§ 1659, 1666); and this would run, not from the date of sale, but probably from the time the purchaser went into possession.

This same statute underwent a construction by the Supreme Court of Massachusetts, in *Holmes* v. *Beal*, 9 Cush. 223.

Dewey, J., giving the opinion of the court, says: "It was contended by the demandant that this limitation of suit to five years applies only to estates 'sold' by an administrator, and, therefore, necessarily requires the tenant to establish a valid sale before he can avail himself of the statute. But this construction would render the provision in section 37 [literally the same as section 35 in the Iowa Blue Book, quoted *supra*], wholly nugatory.

"In other cases, and in all cases, no more could be

required than to establish a valid sale and conveyance by the executor, by those who would defeat the estate of an heir or devisee of the same.

" If an action were instituted within five years, the sale must be duly established, and upon the demandant's view of the statute, if the party instituted his action after five years, no less a burden rests upon those claiming under an executor's sale. This provision of the statute was intended to quiet titles, and is highly proper and reasonable for the protection of those holding under this species of title."

The view I have taken as to the special statute of limitations has the full support of the judgment of the Supreme Court of Indiana. *Van Cleave* v. *Milliken*, 13 Ind. 105. In the case just cited, the special statute of that State, providing a five years' limitation for executors' sales, was decided to apply to a sale by an administrator made by virtue of a proceeding in which the *heirs were not notified*, and where it was insisted that the sale was therefore void, and that the purchaser acquired no title whatever. Possession had been taken as in the case at bar, and the Supreme Court of Indiana held that the statute of limitations protected the purchaser from the administrator, and that the heirs of the intestate were defeated.

The correctness of my opinion as to the statute of limitations, its policy, purpose and operation, is further corroborated by the cases of *Leffingwell* v. *Warren*, 2 Black. (U. S.) 599 ; *Knox* v. *Cleveland*, 13 Wis. 245 ; *Pillow* v. *Roberts*, 13 How. (U. S.) 472, 476.

The view of the statute of limitations hereinbefore expressed does not conflict with the decision of this court in *Pursley* v. *Hayes*, 22 Iowa, 11, 24. That was a case of a guardian's sale, and this of an administrator's sale. The provision of the statute as to notice is very different.

Rev. §§ 2554 (1502), 2376 (1344). By comparing the two it will be seen that, if notice to the ward be regarded as jurisdictional in the case of a guardian's petition to sell, it by no means follows that it is jurisdictional in applications by the executor to sell. Besides, there is, to say the least, much more ground to treat the application by the guardian to sell as a personal proceeding against the ward than in the case of a like proceeding by an administrator.

And even with respect to a guardian's sale, that case does not decide that the statute will not protect a title where there was no notice to the ward, provided the application to sell was made and petition filed by a duly appointed guardian, the sale ordered by the court, a purchase in good faith approved by the court, and more than five years' possession taken and held thereunder by the purchaser.

The learned judge, in the course of his opinion, without "passing positively" upon the question, suggests a doubt that the statute does not go "so far as to protect a title when there was no jurisdiction or power in the court to order the sale." Where he leaves this question as to guardianship sales, I leave it; and I have referred to the case of *Pursley* v. *Hayes* for the purpose only of stating that, even conceding the same principles apply to the two classes of titles, there is nothing *decided* in it which is inconsistent with the views which I have herein expressed and upon which my judgment rests. In that case we decided that the court *had jurisdiction* to order the sale, and hence there was no question in the case as to what would be the effect of the statute had the court ordered the sale without jurisdiction.

I think the judgment below should be

Affirmed.

WRIGHT, J. — Not differing from the ground stated for the affirmance of this judgment contained in the fore going opinion of the chief justice, I would reach the same result by the shorter route, in holding that the County Court had *jurisdiction* of the parties, and hence the power to order the sale by the administrator. This I believe to be the doctrine of the best considered cases in other States, and in entire accord with the prior rulings of this court. Without stopping to cite them, or to elaborate a question so often discussed in this and other States, I refer to the cases as collected by my brother Beck in his opinion. And this I am the more content to do, as the case must stand affirmed by a division of opinion.

By reason of the division of opinion above indicated, it follows that the judgment below must stand

Affirmed.