ANNA C. HUBERMANN ET AL. V. MARY B. EVANS ET AL.

FILED JANUARY 21, 1896.    No. 5731.

1. **Guardians' Sales:** REGULARITY OF PROCEEDINGS: TITLE OF PURCHASER. Defects and irregularities in the proceedings by a guardian for the sale of the real property of his ward will not affect the title of a good-faith purchaser, where so much as section 64, chapter 23, Compiled Statutes, makes essential to the validity of the sale has been complied with.

2. ——: ——: JURISDICTION: DISTRICT COURT. By "a district court of competent jurisdiction," in subdivision 1 of said section, is meant the district court of the county in which the guardian was appointed.

3. **Guardian and Ward:** PETITION TO SELL LAND: DESCRIPTION OF PROPERTY. A petition by a guardian for a license to sell the ward's real estate should describe all the land that the

ward owns, and especially that which is sought to be sold; but any description therein will be sufficient, when collaterally assailed, if it provides the means of identifying the property.

4. ———: ———: ———. In proceedings to sell the real estate of a ward, the description of the land need not necessarily be more specific, definite, and certain than is required in a conveyance of real property. Hence a general description of the premises in such petition, as all the real estate of the ward situate in this state, or in any particular county or city therein, is not void for indefiniteness and uncertainty.

5. ———: SALE OF LAND: REGULARITY OF PROCEEDINGS. The proceedings of a guardian to obtain authority to sell the land of his ward will not be invalidated by reason of a manifestly false statement in the description of the property in the application and license, when the remainder of the description, after rejecting that which is erroneous, is sufficiently certain to enable the land to be located.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*Winfield S. Strawn*, for plaintiffs in error.

*Wharton & Baird* and *B. G. Burbank, contra.*

NORVAL, J.

This is an action by plaintiffs in error to recover lot 4, in block U, in Lowe's Addition to the city of Omaha. Two other actions were brought in the court below by the plaintiffs against other defendants, to recover lots 5 and 6, in the same block. By consent, the three cases were tried together, and by stipulation of the respective parties it was agreed that the decision in one should control the others, since the facts in each case were the same. Upon a trial to the court judgment was entered herein against the plaintiffs. There is no controversy as to the facts. The parties claim title to the real estate in controversy through August Hubermann, deceased, as a common source. On the 15th day of December, 1878, August Hubermann died in Douglas

54

county, this state, intestate, seized in fee-simple of lots 7
and 11 in block S, lots 4, 5, and 6 in block U, and lots 1,
2, 3, 4, 5, and 6 in block V, all in Lowe's Addition to
the city of Omaha.   Hubermann left surviving him three
minor children, the plaintiffs herein, and a widow.   The
latter was subsequently appointed, by the county court of
said county, guardian of said minors, and qualified as such.
The premises last above described were all the real estate
situate in Douglas county which plaintiffs owned at the
time the proceedings hereinafter mentioned for license to
sell the lands of the wards were instituted.   On March 20,
1884, the guardian filed in the district court of Douglas
county the following duly verified petition for an order to
sell the real estate of her wards:

"In the District Court of Douglas County, State of
Nebraska.

"In the Matter of Guardianship<br>
of Anna C. Hubermann et al.,<br>
Minors.

"Now comes Ellenor Hubermann, guardian herein of
Anna C. Hubermann, Emma Hubermann, and Henry Hu-
bermann, and shows to the court that said minors have no
personal estate whatever or of any kind, and your peti-
tioner is the mother of said minors, and she is a widow and
without any means of support, except what she can earn
by her own labor.

"Your petitioner further shows to the court that said
minors are possessed of real estate situated in the county
of Douglas, and state of Nebraska, and described as fol-
lows, to-wit: Lot seven (7) in block S, lot eleven (11) in
block S, lots four (4), five (5), and six (6) in block W, and
lots one (1), two (2), three (3), four (4), five (5), and six (6)
in block V, all in Lowe's Addition to the city of Omaha.

"Your petitioner further states that the above is all the
real estate belonging to said minors.   She also states that
there is a mortgage amounting with interest upon said real

estate to about the sum of $1,500, and that said real estate is now worth about the sum of $2,000.

"Your petitioner further alleges that said minors are in need of the proceeds of the sale of their said real estate for their support, maintenance, and schooling.

"Wherefore your petitioner prays that she be licensed to sell all the above described real estate, and that an order be made to her for that purpose by this honorable court, and for such other and further relief as in equity she is entitled to."

Notice of the presentation of the foregoing application was published for the period and in the manner provided by law, which notice contained no specific description of the property, but stated in general terms the object and prayer of the petition to be to secure a license to sell the real estate of the minors situated in Douglas county, Nebraska. Pursuant to said notice the district court entered an order or decree authorizing a sale of all the real estate described in the petition. The guardian, after taking and subscribing the oath required by law, and filing the statutory bond, which was approved, gave due and legal notice that she would, in obedience to said license, on the 28th day of November, 1885, at 10 o'clock in the forenoon of said day, sell the real estate of her wards, which notice stated the time, place and terms of sale, and described the real estate thus: "The following described real estate being and situated in Douglas county and state of Nebraska, to-wit: Lots 7 and 11 in block S, lots 4, 5, and 6 in block U, lots 1, 2, 3, 4, 5, and 6 in block V, all in Lowe's Addition to the city of Omaha." On the date last aforesaid, and pursuant to the terms of said notice, the guardian sold at public sale all the real estate last above described, including the lot in controversy herein, to Dexter L. Thomas, who was the highest bidder thereof, and who purchased in good faith and for a valuable consideration. Subsequently said sale was reported to, and con-

firmed by, the district court, and a deed was executed, acknowledged, and delivered by said guardian to said Thomas, covering the property so purchased by him, including said lot 4 in block U. The lots in block U were erroneously described as in block W in the petition of the guardian for license and in the license to sell. There is not now, and never has been, any block in Lowe's Addition to the city of Omaha known or designated as "block W." The defendant claims title to, and holds possession of, said lot 4 in block U under and through a series of valid conveyances from said Dexter L. Thomas. It is obvious that the plaintiffs are entitled to recover the premises in dispute, unless their title or interest therein was divested by the guardian's deed already mentioned. Whether it had that effect is the pivotal point in the case.

The legislature has, by sections 42 *et seq.* of chapter 23, Compiled Statutes, enumerated the purposes for which a guardian may sell the real estate of his ward, and prescribed the steps to be taken by the guardian in order to effect such sale, one of these being that the contemplated sale must be first licensed either by the district court of the county in which the guardian obtained his appointment, or by a judge of such court, and this, though the premises are located in another county. (*Stack v. Royce*, 34 Neb., 833.) There is no room to doubt that a sale by a guardian without such order is of no force whatever. It is not merely irregular, but is absolutely void. (*Ludlow v. Culbertson Park*, 4 O., 5; *Newcomb v. Smith*, 5 O., 448; *Goforth v. Longworth*, 4 O., 129; *Bell's Appeal*, 66 Pa. St., 498; *Evans v. Snyder*, 64 Mo., 516; *Walbridge v. Day*, 31 Ill., 379; *Tippett v. Mize*, 30 Tex., 361.) In the case before us a license was issued by the court of the proper county; but it is argued by counsel for plaintiffs that it and the application therefor were so defective as to render the guardian's deed nugatory. The objections to the proceedings instituted by the guardian to obtain the license which resulted

in the sale and conveyance of the property present the questions which have been discussed by counsel in the briefs and to be decided by the court. As this action is based upon the ground that no title to the premises in dispute passed to Thomas by the sale and conveyance made by the guardian, we look alone for defects of such a character as will render the proceedings void.

It is contended that the district court had no jurisdiction to license the sale of the lot, because it was not described in the petition presented by the guardian asking for authority to make the sale. It is strenuously argued by defendant's counsel that it is not essential that such a petition should contain any description of the real estate. We will proceed to the consideration of the point.

Sections 42, 43, 47, 48, and 53 of chapter 23, Compiled Statutes, are as follows:

"Sec. 42. When the income of the estate of any person under guardianship, whether as a minor, insane person, or spendthrift, shall not be sufficient to maintain the ward and his family, or to educate the ward when a minor, or the children of such insane person or spendthrift, his guardian may sell his real estate for that purpose, upon obtaining a license therefor, and proceeding therein as provided in this chapter.

"Sec. 43. When it shall satisfactorily appear to the court, upon the petition of any such guardian, that it would be for the benefit of his ward that his real estate, or any part thereof, should be sold, and the proceeds thereof put out at interest or invested in some productive stock, his guardian may sell the same for that purpose, upon obtaining a license therefor, and proceeding therein as hereinafter provided."

"Sec. 47. In order to obtain a license for such sale, the guardian shall present to the district court of the county in which he was appointed guardian a petition therefor, setting forth the condition of the estate of his ward, and

the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale, which petition shall be verified by the oath of the petitioner.

"Sec. 48. If it shall appear to the court from such petition that it is necessary or would be beneficial to the ward that such real estate or some part of it should be sold, the court shall thereupon make an order directing the next of kin of the ward, and all persons interested in the estate, to appear before such court at a time and place therein to be specified, not less than four nor more than eight weeks from the time of making such order, to show cause why a license should not be granted for the sale of such estate."

"Sec. 53. If, after full examination, it shall appear to the court either that it is necessary or that it would be for the benefit of the ward that the real estate, or any part of it, should be sold, such court may grant a license therefor, specifying therein whether the sale is to be made for the maintenance of the ward and his family, or for the education of the ward or his children, or in order that the proceeds may be put out or invested as aforesaid."

Provisions are made in other sections of the chapter for notifying the next of kin of the ward and all parties interested in the estate of the time fixed for the hearing, that they may, if so advised, resist the application; also, for the guardian giving a bond and taking and subscribing an oath before the sale shall be made, and for the giving of a notice of the sale; but the sections relating to these matters need not be copied here, as they shed no light upon the question under consideration. The statute is explicit that a petition for a license to sell must be presented by the guardian, and clearly such petition is to be in writing. The statute likewise enumerates certain matters which the petition shall disclose, one of which being a statement of the facts relied upon to show the necessity and expediency of the sale of the ward's lands. In an action at law the petition should set forth the facts entitling the plaintiff to

recover; and so in a petition by a guardian for authority to sell real estate, the matters necessary to justify the granting of the license, and the sale thereunder, should be averred. The application must show that the ground upon which the sale is asked is one of the purposes specified by the legislature for which a sale may be licensed. The authorities do not agree as to the necessity of describing in the application the property sought to be sold. Some hold that it is essential, and that where a license is based upon a petition with the description omitted, the order and sale thereunder are void (*Leary v. Fletcher*, 1 Ired. [N. Car.], 259; *Ducket v. Skinner*, 11 Ired. [N. Car.], 431; *Spruill v. Davenport*, 3 Jones Law [N. Car.], 42; *Verry v. McClellan*, 6 Gray [Mass.], 535; *Weed v. Edmonds*, 4 Ind., 468; *Trent v. Trent*, 24 Mo., 307; *Wilson v. Hastings*, 66 Cal., 243; *Gilchrist v. Shackelford*, 72 Ala., 7); and others say it is not essential that the property be particularly described in a petition for its sale (*Wells v. Mills*, 22 Tex., 302; *Wells v. Polk*, 36 Tex., 121; *Davis v. Touchstone*, 45 Tex., 491; *Bryan v. Bauder*, 23 Kan., 95); and there is another line of cases which holds that the omission of the description from the application for an order of sale, or that the petition is otherwise defective, is an error or irregularity merely, available alone in a direct proceeding to review the decision, but that the order allowed on such a petition is not void when assailed collaterally. Among the numerous decisions sustaining this doctrine are: *Burke v. Wheat*, 22 Kan., 722: *Hodgin v. Barton*, 23 Kan., 740; *Watts v. Cook*, 24 Kan., 278; *Arrowsmith v. Harmoning*, 42 O. St., 254; *Rumrill v. First Nat. Bank of St. Albans*, 28 Minn., 202; *Montour v. Purdy*, 11 Minn., 278; *Howard v. Moore*, 2 Mich., 226. Although our statute does not in express language say that the petition of a guardian for a license to sell the real estate of his ward must describe or set forth the property, we are constrained to hold that the manifest intention of the legislature was that the application should designate

the property belonging to the ward. This is obvious from the fact that by section 53, already quoted, the order or license must specify whether the whole or only a part of the property shall be sold, and further, that section 47 requires the petition to state the condition of the estate of the ward. Again, proceedings for the sale of real property by a guardian are necessarily *in rem*, and the application should show that the *res* is in the jurisdiction of the court granting the order. The authority of a guardian is confined to the state in which he was appointed, and, therefore, he cannot be empowered in this state to sell property situate in another state. The petition should, therefore, disclose that the real estate for which sale is prayed is within this state.

It will be observed that the petition or application for a license in the case under consideration does not specifically state that any of the real estate belonging to the wards was located in block U, in the particular block in which the lot in question is situate, and consequently it is argued that the court had no power to license the sale thereof. The defendant urges that the confirmation of the sale made by the guardian cured any and all defects, errors, and irregularities previously accruing in the proceedings, and that they are not available in this collateral action. Section 64, chapter 23, Compiled Statutes, is relied upon in support of the latter contention. It provides: "In case of an action relating to any estate sold by a guardian, under the provisions of this subdivision, in which the ward, or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear: First—That the guardian was licensed to make the sale by a district court of competent jurisdiction. Second—That he gave a bond, which was approved by the judge of the district court, in case any bond was required by the court upon granting the license. Third—That he

took the oath prescribed in this subdivision. Fourth—That he gave notice of the time and place of sale, as prescribed by law. Fifth—That the premises were sold accordingly, at public auction, and are held by one who purchased in good faith."

Errors and irregularities in the proceedings instituted by a guardian for the sale of real estate, owned by his ward, are reviewable in an appropriate proceeding, but it by no means follows that the sale is void on account thereof. The section last quoted provides when a ward, or a person claiming a title under and through him, may contest the validity of a guardian's sale, and what shall be conclusively taken to be a valid sale, when attacked in a collateral action, like the one before us. It is not every defect, irregularity, or omission preceding the sale that will defeat the title of a good-faith purchaser; but only those enumerated in the statute. This is self-evident, since if every step laid down in the statute relating to the sale of real estate of those under guardianship must be strictly followed, to constitute a valid sale, then there never can be irregularities or defects to cure; and the enacting of section 64 was a useless piece of legislation. The legislature contemplated that mistakes and omissions would likely occur in such proceedings by the failure of the guardian to strictly follow each requirement of the statute; and the purpose of the lawgivers in adopting the aforesaid section was to prevent a defeat of the sale on account of such defects and errors in the proceedings, when collaterally assailed, where it appears that the five requirements of said section have been complied with. In other words, the sale must stand as valid unless some one of the five grounds for which a sale may be avoided is made to appear; but if any one of the requisites prescribed in section 64 is lacking, the sale must fall; otherwise the purchaser acquires by the sale and deed a perfect title, whatever else is wanting. This is the plain import of the statute. Neither the failure to give notice

of the application for a license to sell, nor defects in a peti⁻
tion, will render the proceedings void under this curative
section. The legislature could have dispensed with the
giving of such notice, or with the presentation of any peti-
tion, and this being true, it could provide by statute, as it
in effect has done, that sales shall be valid when made,
where the petition is defective or entirely wanting, or where
the notice of the application for the order is defective or
entirely lacking, in case the matters specified in section 64
appear. (*McKeever v. Ball*, 71 Ind., 398.)

In the case before us, it is established beyond controversy
that the guardian of these plaintiffs gave a bond as pre-
scribed in the license, which was duly approved; that she
took and subscribed the oath required by statute; that the
lot in question was duly advertised and sold at public sale;
and that the defendant is a good-faith purchaser of the
premises. Therefore, the second, third, fourth, and fifth
requirements of section 64 have been fully complied with.

It remains to be determined whether "the guardian was
licensed to make the sale by a district court of competent
jurisdiction," as required by the first subdivision of the sec-
tion under consideration. The sale was authorized by an
order entered by the district court of Douglas county, the
county in which the guardian received her letters of guar-
dianship. Was the license issued by a court of competent
jurisdiction? We entertain no doubt of it. The words
"competent jurisdiction," as used in the section, mean the
court which has the power or authority conferred upon it
by the law to hear and determine the particular application,
and whose jurisdiction it was proper to invoke in that in-
stance. The statute has expressly conferred the power
upon the district court of the county where the guardian
was appointed, or a judge of such court, to license the sale
of real estate of the ward for certain specified purposes.
Where a guardian of minors is appointed by the county
court of Douglas county, the district court of no other

county in the state could lawfully order the sale of the real
estate belonging to such minors, and should it do so, the
order and sale thereunder would be absolutely void, and
their invalidity could be asserted in a collateral proceeding.
What the legislature intended was that the sale must have
been authorized by the proper forum; *i. e.*, the district
court of the county, wherein letters of guardianship were
granted, or by the judge of such court.  Orders of sale
made or rendered by such court, or judge, upon applica-
tions for license to sell real estate by a guardian, cannot be
impeached collaterally; because, however erroneous they
may be, they are not void.  A *bona fide* purchaser at a
guardian's sale, under a license issued by a court of com-
petent jurisdiction, is not bound to look beyond the license,
but takes a good title which cannot be impeached collat-
erally, and is not affected by any irregularities in the pro-
ceedings except for the matters enumerated in said section 64.
The construction we have placed upon said section is not
without precedents to sustain it, but is abundantly sup-
ported by the following decisions pronounced under statu-
tory provisions the same as ours: *Montour v. Purdy,* 11
Minn., 278; *Rumrill v. First Nat. Bank of St. Albans,* 28
Minn., 202; *Howard v. Moore,* 2 Mich., 226; *Coon v. Fry,*
6 Mich., 506; *Marvin v. Schilling,* 12 Mich., 356; *Woods
v. Monroe,* 17 Mich., 238; *Cooper v. Robinson,* 2 Cush.
[Mass.], 184; *Harris v. Lester,* 80 Ill., 307; *Reynolds v.
Schmidt,* 20 Wis., 394; *Mohr v. Porter,* 8 N. W. Rep.
[Wis.], 364; *Ackerson v. Orchard,* 7 Wash., 377; *Overton
v. Cranford,* 7 Jones Law [N. Car.], 415.

But it is said the court never authorized the sale of the
lot in suit.  In the license granted, as well as in the peti-
tion therefor, this lot is not particularly mentioned or de-
scribed.  In the decretal order the court finds "that it is
for the best interest of said minors that said real estate in
said petition described should be sold,  *  *  *  and that
the interest derived from the sale of said real estate should

be used for the maintenance and education of said minors,"
etc., and then orders that the "guardian proceed to sell at
public auction to the highest bidder the real estate of said
minors as in said petition described," following which, for
the first time therein, is a specific description of the prop-
erty, the same as contained in the application for license.
It is obvious that, for the purpose of ascertaining what prop-
erty was ordered sold, the petition and license must be con-
strued together.    As mentioned in our statement of the
facts in the fore part of the opinion, the petition for an or-
der of sale describes certain of the property for which sale
was asked as located in block " W " in Lowe's addition to
the city of Omaha, when there is no such block in that ad-
dition, instead of describing it as in block " U " in said
addition, in which last block the lot in controversy is sit-
uate.    It must be conceded, if there were nothing aside
from the specific description of the property contained in
the application or license to indicate the land asked and
directed to be sold, that the sale of the lot in suit was never
authorized, and the guardian's deed did not convey this lot.
But there is inserted in the petition for license to sell, other
descriptions or identifications of the lots which the court
was requested to order sold.    It was all the real estate be-
longing to the wards that was asked to be sold, and the same
is described as being in Lowe's Addition to the city of
Omaha.    We then have a case where the petition for a
license contains two inconsistent descriptions of the prop-
erty,—the one general, and the other specific; the former
true and the latter, in part, false and incapable of being ap-
plied to any tract of land.    Two questions arise: First—
Which description shall give way to the other?    Second—
If the false one shall be rejected, is the general description
of the property sufficient to authorize the sale of the lot in
dispute?    We will take up the propositions in their in-
verse order.

The office of a description in a deed is not to identify

the lands conveyed, but to provide the means of identification; and it is sufficient when this is done. ( *Works v. State*, 22 N. E. Rep. [Ind.], 127.) It must be conceded, we think,—for such is undoubtedly the law,—that the description of the property in the proceedings by a guardian for the sale of the lands of the ward, need not necessarily be more specific, definite and certain than is demanded in deeds or other conveyances of real property. A conveyance is not void for want of description, where an uncertainty as to the identity of the land conveyed can be explained by extrinsic proofs. ( *Henry v. Whitaker*, 17 S. W. Rep. [Tex.], 509; *Mc Whirter v. Allen*, 20 S. W. Rep. [Tex.], 1007; *Perry v. Scott*, 109 N. Car., 374.) A deed simply describing in the granting clause all the grantor's lands in the state, or within a certain county or city, is not void for indefiniteness, but is a sufficient description, since it can be made certain by evidence *aliunde* of what lands the grantor at the time owned. (1 Dembitz, Land Titles, sec. 6; *Witt v. Harlan*, 66 Tex., 660; *Hervey v. Edens*, 6 S. W. Rep. [Tex.], 306; *Cox v. Hart*, 145 U. S., 376; *Frey v. Clifford*, 44 Cal., 335; *Brown v. Warren*, 16 Nev., 228; *Harris v. Broiles*, 22 S. W. Rep. [Tex.], 421; *Minor v. Lumpkin*, 29 S. W. Rep. [Tex.], 799; *Crowley v. Goll*, 27 S. W. Rep. [Tex.], 879.)

In the fifth subdivision of the syllabus in *Stanley v. Green*, 12 Cal., 148, it is said: "It is undoubtedly essential to the validity of a conveyance, that the thing conveyed must be described so as to be capable of identification; but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence." (See *Redd v. Murry*, 30 Pac. Rep. [Cal.], 132.)

It has been held that extrinsic evidence is admissible to locate lands conveyed by a sheriff's deed containing an accurate, but general, description of the premises. ( *Smith v. Crosby*, 86 Tex., 15; *Brown v. Warren*, 16 Nev., 228.)

*Ward v. Saunders*, 6 Ired. [N. Car.], 382, was an action

of ejectment to recover lands purchased at an execution sale. The return of the officer on the writ described the premises thus: "Levied on the lands and tenements of Isham Doby, adjoining the land of Allen Newsom, Claiborne Newsom and others, and containing 190 acres." It was ruled that this was sufficient to distinguish and identify the lands, and complied with the statute which requires that the officer making the levy shall make return setting forth "what lands and tenements he has levied on, on what water-course, and whose land it is adjoining." To the same purport are the cases of *Smith v. Low*, 2 Ired. [N. Car.], 457; *Blanchard v. Blanchard*, 3 Ired. [N. Car.], 105.

In *Starling v. Blair*, 4 Bibb [Ky.], 288, Wilkinson gave to one M'Ilvain a mortgage upon "all the lots that he then owned in the town of Frankfort, whether he had a legal or equitable title thereto." The mortgage was foreclosed, and an order of sale was issued, under which lot 82, the one involved in that suit, was sold to Starling. In an action by Blair to specifically enforce a contract alleged to have been made by Wilkinson for the sale of the lot, it was contended the mortgage was invalid, on the ground that the description of the premises was too general and uncertain. The court held the description good for all the lots which could be identified as belonging to the. mortgagors at the date of the mortgage; and in passing upon the question, in the opinion, say: "This objection is certainly novel in its nature. As far as we are aware it is unsupported by any authority, nor can we perceive any reason to justify it. The expression used, though general, is not uncertain. It clearly and explicitly manifests the intention of the parties, and there is nothing unlawful in that intention. There may indeed be more difficulty in ascertaining the lots intended to be conveyed, where the language used in describing them is thus general, than if the lots had been designated by their numbers. But it is in the degree and not in the nature of the difficulty that the two cases differ. It

results in neither case from no ambiguity on the face of the deed, but from extrinsic circumstances, and in both cases resort must be had to evidence *aliunde* for the purpose of identifying the lots which are the subject of the conveyance."

In *Davis v. Touchstone,* 45 Tex., 490, lands belonging to an estate were sold, on the petition of the administrator, by order of the probate court.    In a suit in ejectment against the heirs, they set up that the premises were not sufficiently described in the order of sale or administrator's deed, the description being "a part of the headright league of land granted to Leander Harle, containing three hundred and twenty acres, being the tract on which the said James Touchstone lived at the time of his death, adjoining the lands of A. H. Davis, James Aikins, and William C. Easterwood."    The description was held sufficient.

*Robertson v. Johnson,* 57 Tex., 62, was a suit by minors to recover certain real estate which had been sold by their guardian under an order by the probate court, the defendants claiming title to the land through such sale.    The plaintiffs insisted that the order of sale was void, because of the insufficient description of the lands.    The court in overruling the contention said: "An order of sale has been sustained in which no description was attempted to be given of the land ordered to be sold, or any mention by name, designation, or description of any particular tract of land. (*Wells v. Polk,* 36 Tex., 126.)    In this case the order of sale empowered the guardian to sell at the court house door in the town of Paris, Lamar county, 'three hundred and twenty acres of land known as the headright of William H. Merrill,' etc.    As was said by the present chief justice in *Davis v. Touchstone, supra,* ' the description in these orders is not such as should have been given, but it cannot be said to give no data for identification.'    Here if, as recited in the order, the three hundred and twenty acres of land was known as the headright of William H. Merrill, it appears

that this would furnish affirmative matter by which the
land might be identified. We do not think the order of
the sale is void for a want of description of the property
directed to be sold."

In *De Bardelaben v. Stoudenmire*, 48 Ala., 643, lands of
a decedent were sold by order of the probate court on the
application of the administrator of the deceased. The sale
was attacked upon the ground of the insufficiency of the
description of the property in the petition. There were
two tracts mentioned in the petition, but the county and
state where located were not given. One was described as
a quarter section, but the number was not given, but was
bounded on its four sides by lands of three persons named.
The court held the description sufficient. We quote
the fourth paragraph of the syllabus: "If the petition
omits, in words, to state that the lands are in the county,
or within the jurisdiction of the court in which the appli-
cation is made, yet, if such a description is given as to
leave no real difficulty in identifying the lands intended, it
will be sufficient, especially if no objection is interposed be-
fore the final order of the sale is made."

*Pendleton v. Trueblood*, 3 Jones Law [N. Car.], 96, was
an action of ejectment to recover lands of a ward, sold by
his guardian, under an order of court. The order author-
ized the guardian "to sell the land of the ward named in
the petition, adjoining the lands of John Bailey and others,
containing about one hundred and ten acres." It was
urged that this description was insufficient to divest the
title of the ward. The court overruled the objection, say-
ing: "It does not appear, and it is not suggested, that she
had any other land in that locality, nor indeed anywhere
else. Such a description would be sufficient to distinguish
and identify lands levied on by a constable under a jus-
tice's execution; and we think it must be so in a case like
the present."

In *Clements v. Henderson*, 4 Ga., 148, a description of

land in an order authorizing the administrator to sell "all the real estate" of the decedent was held sufficient.

In *Bloom v. Burdick*, 1 Hill [N. Y.], 130, a description in a license issued to an administrator to sell the property of his intestate, as " ninety-one acres of the southwest corner of lot number eleven" was held not to be fatally defective.    The court, in passing upon the point, said: "The description would be best answered by laying out ninety-one acres in a square form on the southwest corner of the lot, which would not include more than forty acres of the land of the intestate, and would include about fifty acres of land belonging to some other person.    But there is, I think, enough in the case to help the purchaser out of this difficulty.    It was an order for the sale of the real estate of which Henry Bloom died seized, and there were to be ninety-one acres in a specified lot.    The intestate owned precisely that quantity of land, and no more, in the designated lot, and his land touched the southwest corner of the lot, though it did not lie in a square form.    The surrogate evidently had in view the particular parcel of land which the intestate owned in lot number eleven.    The matter must have been well understood by all the parties in interest, and I think the whole of the land in controversy might well pass by the deed."

We have already stated that a description of the lands should be given in the application of a guardian for an order of sale.    As in a conveyance of real estate, so in the proceedings by a guardian to obtain authority to sell the lands owned by his ward, it is far better that the property be specifically and accurately described, since it would obviate a resort to extrinsic evidence to determine the property affected by the court's order.    But upon principle, as well as authority, if the description given, though general in its terms, is such as to leave no difficulty in identifying the premises intended, by the use of such means as would be admissible in a court of justice for that purpose, it will

be sufficient after confirmation of the sale. In this case, after eliminating from the application for license and order of sale the specific, yet uncertain and impossible, description of the property, we have remaining an application for license, and an order to sell all of the real estate of the plaintiffs. Under the authorities heretofore mentioned such general description is not void for uncertainty, but is ample to sustain the guardian's deed for the lot involved in this litigation.

We now pass to a consideration of the remaining proposition, namely: Can any portion of the specific description of the property contained in the application and license be rejected, or must the general description therein contained yield to the specific? It is a well established rule, in the construction of deeds or other instruments containing two descriptions of property, which are not consistent with each other, one false and the other true, that extrinsic evidence may be resorted to for the purpose of ascertaining which one is correct, and that the instrument or deed must be interpreted accordingly. This is but an application of the familiar maxim *falsa demonstratio non nocet,* sanctioned by all the authorities. In 2 Devlin, Deeds, sec. 1016, it is said: "If the deed contains two descriptions, one correct and the other false in fact, the latter should be rejected as surplusage. Where one of two different descriptions applies to land to which the grantor had title, and the other to land which he did not own, the former will be taken as the true description and the latter will be rejected as false. If sufficient remains, after rejecting a part of the description which is false, the deed will take effect." The rule deducible from the authorities may be summarized thus: A deed will not be defeated by a manifest erroneous description therein of the property intended to be conveyed, when the remaining part of the description is sufficiently certain by the aid of proof *aliunde* to locate the land. (*Parks v. Loomis,* 6 Gray [Mass.], 467; *Bosworth v. Sturtevant,* 2 Cush.

[Mass.], 392; *Mason v. White,* 11 Barb. [N. Y.], 173; *Masten v. Olcott,* 101 N. Y., 152; *Roman Catholic Orphan Asylum v. Emmons,* 3 Brad. [N. Y.], 144; *Vose v. Handy,* 2 Greenl. [Me.], 322; *Harvey v. Mitchell,* 31 N. H., 575; *Thompson v. Ela,* 60 N. H., 562; *Benton v. McIntire,* 15 Atl. Rep. [N. H.], 413; *Wilt v. Cutler,* 38 Mich., 189.)

Although this opinion has already reached an unusual length, we feel that the importance of the question involved will justify our referring to, and making quotations from, a few of the leading cases where the identical principle here contended for by defendants has been judicially determined.

*Moreland v. Brady,* 8 Ore., 303, was an action to quiet title to lot 2, in block 187, in the city of Portland. The parties claimed title under one Bernard Brady, late of Multnomah county, deceased, as the common source; the plaintiff under and through mesne conveyances from Esther Brady, one of the devisees of the last will of Bernard Brady. The defendants urged that the will was void because of a misdescription and that parol evidence was inadmissible in aid of its construction. The fourth clause of the will contained the following: "As also a certain parcel of ground or lots in the city of Portland, and numbered as follows, to-wit: No. block (187) one hundred and eighty-seven, lot No. (2) two, I bequeath to Margaret McGill." The sixth clause of the will reads: "I also bequeath to my sister, Esther Brady, that lot, or parcel of ground, in the city of Portland, as here described, lot No. (1) one, in block (187) one hundred and eighty-seven." It was disclosed that Bernard Brady never owned either lots 1 and 2 in block 187, but did, at the date of his will, and when he died, own lots 3 and 4 in said block. The court sustained the will, holding that by rejecting the erroneous part of the description the remainder was sufficient to identify the property with reasonable certainty. Boise, J., in delivering the opinion of the court, said: "The de-

vise is the same as if the numbers of the lots had not been mentioned at all or had been named and the numbers left blank. We are then compelled to fall back upon the remaining portion of the description, to-wit: 'A certain parcel of ground or lots in the city of Portland, in block No. 187; also, that lot or parcel of ground in the city of Portland in block 187.' And by thus placing ourselves in the position of the testator, by oral evidence at the time of the execution of his will, we find that there were two lots or parcels of ground in the city of Portland, and in block 187, belonging to the testator at that time and also at the time of his death. This renders the devise entirely certain from the language of the will as to the intention of the testator. The description would have been sufficient by merely naming the block and city in which the lots or land lay without specifying the numbers of them."

*Riggs v. Myers,* 20 Mo., 239, was an interpretation of a will, which described the land devised as the "southeast and southwest quarters of section 4 in township 60, range 38, in Holt county, Missouri," with the privilege of using the water of the Big spring, having free access to and from it as he may wish. It being shown by parol evidence that the testator owned the corresponding section of township 59 of the same town, range and county, and that the Big spring was upon the southeast quarter of section 4, in township 59, and did not own any land in section 4 of township 60, it was held the false description should be rejected, and that the will passed the lands in section 4 of township 59. (See, also, *Lessee of Allen v. Lyons,* 2 Wash. C. C. [U. S.], 475; *Winkley v. Kaime,* 32 N. H., 268.)

In *Melvin v. Proprietors of Locks and Canals,* 5 Met. [Mass.], 15, the land was described in the deeds from the heirs of Kittridge to Moses Cheever as follows: "A certain share of 'about one hundred acres of land, be the same more or less, with the buildings thereon standing, situate in the town of Chelmsford, in the county of Mid-

dlesex, being the same estate on which the said Moses Cheever now lives, and which was conveyed by Benjamin Melvin and Joanna Melvin to Dr. Kittridge by deed dated the 25th day of April, 1782.' " The two descriptions did not agree, and the question before the court was which should be considered the true description. It was held that the conveyances passed the title of the heirs to the whole farm, notwithstanding the deed from the Melvins to Kittridge, which was referred to in the conveyances, did not include the whole premises. The court say: "It is another well-known rule in the construction of deeds and other instruments that if some of the particulars of the description of the estate conveyed do not agree, those which are uncertain and liable to errors and mistakes must be governed by those which are more certain. Thus the boundaries of lands by known monuments are always to control the description by courses and distances, and so courses and distances will control the quantity of land expressed. Another rule of construction is that if the description be sufficient to ascertain the estate intended to be conveyed it will pass, although some particular circumstance be added inconsistent with the description." The same court in the case of *Sawyer v. Kendall*, 10 Cush. [Mass.], 241, said: "The remaining objection to the demandant's right to recover is that he shows no title to the land claimed, because the description in the deed from Nancy Brown to the demandant, by metes and bounds, does not include the demanded premises, and that the particular description is not to be controlled by the reference in the deed to the partition of the estate by the commissioners and the bounds therein given which do comprehend the premises in dispute. The principle on which this objection rests is well founded, and were it applicable, would be decisive of this case. But upon comparing the metes and bounds given by the deed with the plan referred to upon which they were laid down, and which is also made a part of the

particular description, it will be found that they do not correspond, and that it is impossible to trace out and mark the granted premises with intelligible certainty by following the description contained in the deed. By reason of some unexplained error, the metes and bounds in that part of the description which applied to the demanded premises are wholly uncertain, and it is impossible to ascertain by them the precise land granted by the deed. It is not a case, therefore, of two inconsistent descriptions in which the general must yield to the particular, but of an uncertain and impossible description, which must be controlled by an intelligible though general description given by a reference to the grantor's title by partition. (*Melvin v. Proprietors of Locks and Canals*, 5 Met. [Mass.], 15–28.) "

In the case of *Worthington v. Hylyer*, 4 Mass., 196, the mortgage described the property as "all that my farm of land in said Washington, on which I now dwell, being lot No. 17 in the first division of lands there, containing 100 acres with my dwelling house and barn thereon standing, bounding west on land of Joseph Chaple, northerly by a pond, easterly by lot No. 18, and southerly by lot No. 19, having a highway through it." The land claimed under the mortgage was not included in lot 17, nevertheless the court, by Parsons, C. J., decided that it passed under the first description, and that the additional description being inconsistent therewith, was to be rejected. In the opinion it is said: "If the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance that the intent of the parties may be effected." The same doctrine has been held and applied in *Brookman v. Kurzman*, 94 N. Y., 272; *Zink v. McManus*, 49 Hun [N. Y.], 583; *Schoenewald v. Rosenstein*, 5 N. Y. Sup., 766; *Peterson v. Ward*, 23 S. W. Rep. [Tex.], 637.

*Boardman v. Reed*, 31 U. S., 328, was a suit in eject-

ment to recover 8,000 acres of land. The property was described in the patent as lying and being in Monongalia county, while it appeared from parol proof that at the date of the patent it was not situated in said county but in the county of Harrison. The other calls of the patent placed the land in the last named county. The court, by Justice McLean, held the grant was not void for uncertainty, and said: "The contradiction supposed was in the admission of proof that the land covered by the patent is in the county of Harrison, when the patent calls for it to lie in the county of Monongalia. That certain calls in a patent may be explained or controlled by other calls, was settled, and in reference to this very point, by this court, in the case of *Stringer's Lessee v. Young*, before referred to. If the point had not been so adjudged, it would be too clear, on general principles, to admit of serious doubt. The entire description in the patent must be taken, and the identity of the land ascertained, by a reasonable construction of the language used. If there be a repugnant call, which, by the other calls in the patent, clearly appears to have been made through mistake, that does not make void the patent. But if the land granted be so inaccurately described as to render its identity wholly uncertain, it is admitted that the grant is void. This, however, was not the case of the patent under consideration. Its calls are specific, and, taking them all together, no doubt can exist as to the land appropriated by it. The call for the county may be explained, either by showing that it was made through mistake, or that, under the circumstances which existed at the time of the survey, it was not inconsistent with the other calls of the patent. This would not be going behind the patent to establish it, for its calls fully identify the land granted; but to explain an ambiguity or doubt which arises from a certain call in the patent. This principle applies, under some circumstances, to the construction of all written instruments."

An administrator's deed described the granted premises as "lot 2, in block 6, or the west half of block 6, in the town of Lamar." It was held that the description of the premises as "lot 2" should be rejected as false, and the description as the west half of the block should be taken as the true one, it being shown that lot 2 constituted the east half of the block, and that the administrator's intestate owned only the west half. (*Bray v. Adams*, 114 Mo., 486.)

The doctrine recognized in the foregoing authorities is not confined alone to cases involving the construction of deed and will, but is equally applicable to cases like the one before us. Authorities in harmony with this view are not wanting.

*Schnell v. City of Chicago*, 38 Ill., 383, was a suit by the city to enjoin the defendants from prosecuting an action of ejectment brought to recover certain lots in Canal Trustees' subdivision of section 33, held and claimed by the city, it having purchased the same at an administrator's sale made in pursuance of an order granted by the county court. It appears that the petition of the administrator for a license to sell the lands of the intestate, for the purpose of paying the debts of the deceased, described the premises correctly as certain lots lying in section 33. They were, however, described in the abstract from the county court attached to the petition, and in the inventory from which the abstract is, by law, to be taken, and also in the order of sale, as being in section 23. The notice of the sale, and the deed made by the administrator to the purchaser, gave the true location of the premises. It was held that the misdescription of the section mentioned was a mere clerical error, not affecting the validity of the sale, and not available in a collateral proceeding involving the title. The identical question was raised and decided the same way in *Berry v. Young*, 15 Tex., 369.

The case of *Mauarr v. Parrish*, 26 O. St., 636, is quite analogous to that now before us. It was an action by

Laura Parrish against Elizabeth Mauarr, to recover lot 174
in the town of East Ironton.   The defendant claimed title
under the sale of the lot by plaintiff's guardian, under an
order of the probate court.   In her answer she set forth a
copy of the proceedings relating to said sale, by which it
appeared that in the petition of the guardian for an order
to sell the real estate of the ward, the premises were de-
scribed as lots 73, 74, and 75, in East Ironton, while in
the order of sale in the case the lots were designated as 173,
174, and 175, in said town, the latter being the true de-
scription of the lots owned by the ward, which had de-
scended to her from an ancestor, and which were actually
sold by the guardian under said license.   It did not appear
whether Laura owned in East Ironton any lots numbered
73, 74, and 75, and whether she owned other real estate
than the three lots sold.   A demurrer to the answer on the
ground that it showed no legal sale of the lots by the guard-
ian was sustained by the trial court, which judgment was, on
a review of the case, reversed.   The supreme court, speaking
through Welch, C. J., uses the following language: "The
question presented by the first objection is, whether the order
of sale made by the probate court is not void on the ground
that the lots so ordered to be sold are not described in the
guardian's petition, and that, therefore, the court acquired
no jurisdiction over the lots sold.   Had the pleader set
forth in the answer all the material facts relating to the
ward's property, there would probably have been but little
difficulty in deciding the question.   If it be the fact that
the ward really owned six lots in East Ironton, numbered
73, 74, 75, 173, 174, and 175, and that they all 'descended
to her from an ancestor,' the question presented would have
been whether, upon application by the guardian to sell only
a part of the ward's estate, without any description of the
ward's other property, or any disclosure of the fact that
the ward had other property, the court acquired jurisdic-
tion over her entire estate.   This question, however, we

think does not arise in the present case. It seems to us
that there is upon the face of this record of proceedings in
the probate court, taken in connection with the answer set-
ting it forth, sufficient to satisfy anyone that the number of
the lots in the petition of the guardian as 73, 74, and 75,
instead of 173, 174, and 175, was a mere clerical mistake
of the draughtsman. We come to this conclusion for sev-
eral reasons: (1) The mistake is one easily fallen into; (2)
the extreme improbability that the same person should own
six lots happening thus to vary exactly 100 in their num-
bers; (3) the statute requires the guardian to set forth in
his petition a description of all the ward's real estate, and
until the contrary is shown we must presume that in this
respect the petition conformed to this requirement. The
petition, therefore, should be viewed as asking for the sale
of three lots situate in East Ironton, being lots which de-
scended to the ward, and being all the real estate owned by
her, and numbered 73, 74, and 75. Here is simply a case
of a description, repugnant with itself, but containing suf-
ficient within itself to enable the court to make the proper
correction, by eliminating from it what was false, and sup-
plying what was true, so as to make it conform to the real
intention of the parties. This we must presume the court
did, and that it was done upon a proper showing, or proper
knowledge of the subject-matter. We are satisfied that the
lots really sought to be sold, and the lots so sold are iden-
tical, and that this mistake in the petition does not affect
the jurisdiction of the court, or render the order of sale
absolutely void."

*Myers v. McGavock,* 39 Neb., 843, was an action in
ejectment to recover real estate in the city of Omaha, sold
by a guardian under a license issued out of the district
court of Douglas county. The premises were described in
the proceedings instituted by the guardian, and in the guard-
ian's deed, as "the N. E. two-thirds ($\frac{2}{3}$) of lot eight (8),
in block two hundred and three (203), in the city of Omaha,

being all that portion of said lot eight (8), not belonging to the Union Pacific Railway Company." It was ruled that the proceedings were not void for indefiniteness and uncertainty of description, but that the description was sufficient to enable the property to be identified, and to divest the title of the wards to all of that portion of the lot not owned by said railway company. In the case just mentioned there were two conflicting descriptions, and the false one was required to yield to the one which was true.

In the brief of plaintiffs it is said "the expression of one thing is always to the exclusion of others, and the particular description given in the application limited the license and the request therefor to what was properly described therein." The principle sought to be invoked is a familiar one, but we are unable to see its application to this case. Ordinarily a general description of property must yield to a specific description in the same instrument. But this rule does not obtain where such specific description is impossible or false, as the authorities herein cited abundantly show. If the particular description given in the proceedings by the guardian had designated the lot in this case as being in a block having an existence in fact and the plaintiff owned that numbered lot in such block, then there would be ground for argument that the description of the ward's real estate in general terms, as all the real estate, would confer no authority to sell lot 4 in block U. But that is not the case with which we have to deal. The distinction between the supposed and real case is manifest. Here the particular designation of the lots for which application was made to sell, as to some of them, is false and fits no property. It being manifest that authority was requested to sell lands other than these which were correctly described in the proceedings the erroneous description must give way to the general description, and by the latter the identity of the land requested and ordered sold can be ascertained by the aid of extraneous evidence.

Applying the principle already announced to the case in hand, there can be no question as to the validity of the guardian's sale and deed. In the petition of the guardian and the order of sale, the lot in dispute, and others, were described as being in block W, in Lowe's Addition to Omaha, whereas there is no such block in said addition; hence this portion of the attempted specific description of the property in the proceedings for license is in fact no description, and should be regarded as surplusage. Doing this we but apply the maxim *falsa demonstratio*, etc., for, after such rejection, enough is left to enable the property ordered sold to be identified. The inaccuracy or mistake in designating the block in which the lot was located did not make the description of the property void for uncertainty. The real estate of the ward was specifically and accurately given in the guardian's advertisement or notice of sale. That the lot was described in the petition and order of sale as being in block W instead of block U was clearly a clerical mistake, and the court granting the license must have so regarded it, for it confirmed the report of the sale which was accompanied by the notice of the sale and the proof of its publication, and ordered the guardian to execute a deed to the purchaser for the lands so sold. It is clear that the guardian's deed passed whatever title the plaintiffs may have had to the lot in controversy. The judgment is

AFFIRMED.